CENTRAL HANOVER BANK & TRUST CO.
v. CALLAWAY et al.

No. 10585.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1943.

Alexander M. Lewis, of New York City, and J. Randolph Anderson, of Savannah, Ga., for appellant.

A. R. Lawton, Jr., and T. M. Cunningham, both of Savannah, Ga., Francis T. P. Plimpton, Andrew Oliver, and Edward W. Bourne, all of New York City, and Henry B. Brennan and R. Basil Morris, both of Savannah, Ga., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

This is an appeal from two orders entered on December 23, 1942, and on January 4, 1943, respectively, in a proceeding pending in the District Court below for the reorganization of the Central of Georgia Railway Company (hereinafter called "the Debtor") under Section 77 of the Bankruptcy Act, 49 Stat. 911, as amended, 11 U.S.C.A. § 205. Since the propriety of the lower Court's action turns largely on factual considerations, it is necessary to state the facts in some detail.

The Debtor is a railroad corporation owning a system of railroad lines extending west from Savannah, Georgia, to Atlanta, Georgia, and Birmingham, Alabama, with various branches and extensions to other termini. At Savannah it connects with the Ocean Steamship Company of Savannah (hereinafter called "the Steamship Company" which owns extensive terminals and wharves, and, prior to the entry of the United States into the war, operated a freight and passenger line northward between Savannah, New York, and Boston. Thus the railway runs generally east and west, and the connecting Steamship Company, running north and south, has been regarded as a valuable adjunct to the railway, enabling it to compete with other railways serving eastern and southern markets. The Steamship Company has a bond issue of $1,000,000.00 outstanding which matures on July 1, 1943, but substantially all of its capital stock (19,950 out of 20,000 shares) is owned by the Debtor, subject to the pledge with the Central Hanover Bank and Trust Company, appellant, as part of the collateral under a' Collateral Trust Mortgage which the Central Hanover Bank and Trust Company now holds.

A predecessor of the Debtor railroad had executed and delivered to Central Trust Company of New York (now Central Hanover Bank and Trust Company, the appellant herein) its Collateral Trust Mortgage dated May 2, 1887, to secure its Collateral Trust Bonds which were issued in the aggregate principal amount of $5,000,000.00, maturing May 2, 1937, bearing interest at the rate of 5% per annum, payable on May 1 and November 1 of each year, and of which $4,840,000.00 are now outstanding. The Collateral Trust Bonds were secured solely by the pledge of collateral, the most important item of which, as far as this appeal is concerned, is 19,950 (out of 20,000) shares of the capital stock of the Steamship Company.

The Debtor acquired said collateral from its predecessor without having assumed the indebtedness secured by the Collateral Trust Mortgage, but has substantially and regularly contributed toward the payment of interest on the Collateral Trust Bonds, the principal of which is now overdue and unpaid since May 1, 1942. Interest has been paid currently, the last payment being made on or about November 1, 1942. The total amount of interest thus far paid is $2,420,000.00 or 50% of the principal. The income from the collateral has been applied toward the interest payments, but it has been necessary to supplement this income by contributions from the railroad in order to meet the interest requirements as they mature.

Insofar as is material to this appeal, other funded debts secured by liens upon the property of the Debtor include its First Mortgage, securing $7,000,000.00 of bonds now outstanding and constituting a first lien upon the Debtor's main line of railroad from Savannah to Atlanta, Georgia, and also a second lien upon the Steamship Company stock; its Consolidated Mortgage securing $18,500,000.00 of bonds now outstanding and constituting a first lien upon the Debtor's main line of railroad from Birmingham, Alabama, to Americus, Georgia, and also a third lien upon the Steamship Company stock.

On June 19, 1940, while in receivership, the Debtor filed in the Court below its petition under Section 77 of the Bankruptcy Act, supra. The Court entered an order at this time approving such petition

as properly filed, authorizing the Receiver to continue to hold possession of and operate the properties of the Debtor pending appointment of a Trustee, and enjoining all persons from interfering with or enforcing liens upon any portion of the assets of the Debtor.

Thereafter Trustees of the property of the Debtor were duly appointed pursuant to Section 77 and Merrel P. Callaway is now the sole Trustee. The Trustee was directed to formulate and present a plan of reorganization not later than June 19, 1943, unless the time is further extended. Much preliminary work necessary to the formulation of such a plan has been, and is being, done.

On September 3, 1942, the appellant filed a petition in the Court below requesting the Court, in effect, either to vacate this injunction which prevents the appellant from exercising its remedies under the Collateral Trust Mortgage or to instruct the Debtor's Trustee to pay the Collateral Trust Bonds. The trustee of the First Mortgage and the Consolidated Mortgage filed petitions or answers thereto seeking payment of interest on the bonds secured by their mortgages.

On December 23, 1942, the Court below entered an order directing payment of certain installments of interest on the two mortgages mentioned above. On January 4, 1943, it entered an order stating: "* * * that the said petition shall not be dismissed, and the relief thereunder is *not unconditionally denied*, but the injunction which was granted under the order of this Court passed June 19, 1940, which restrains all persons from 'interfering with * * * or enforcing liens upon * * * any portion of the assets of the Debtor', shall be and is hereby continued, and the Debtor's Trustee will not be instructed *at this time* to pay the principal and interest of said Collateral Trust Bonds; if, however, at the end of six months, or prior to June 19, 1943, it is made to appear to the Court that negotiations for the settlement of said Collateral Trust Bond matter have broken down, and that no refinancing is possible and no agreement can be reached for taking care of these bonds in a plan of reorganization, on appropriate motion said petition can be again called up." (Emphasis added.)

The appellant contends that the action of the lower Court in continuing in effect the injunction against the exercise by the appellant of its remedies under the Collateral Trust Mortgage and in directing the payment of interest on the First Mortgage Bonds and the Consolidated Mortgage Bonds of the Debtor, while its injunction was continued in effect, was an unlawful and improper exercise of the Court's discretion.

■ The sole question for determination, therefore, is whether the lower Court abused its discretionary powers in the light of the circumstances.

The Steamship Company is not in reorganization, but its stock, owned almost entirely by the Debtor, is an asset of concededly great value to the Debtor. It is also conceded that the Steamship Company is highly essential to the operation of the railroad as an integral and integrated part of the entire transportation system. The railroad lines of the Debtor operate in an easterly and westerly direction, while the great flow of the traffic is north and south. By virtue of the Debtor's ownership and control of the steamship line it may thus handle, through its steamship connections, through shipments of traffic moving to the northern and eastern markets. It appears, also, that the possession of facilities for shipment by water places the railroad system in a favorable position relative to freight rates. There is, therefore, involved not merely the preservation of the Debtor's equity in the stock in the Steamship Company pledged as collateral, but the value of the control and operation of the Steamship Company to the entire railway system of the Debtor, the loss of which might be highly detrimental to any fair and equitable plan of reorganization of the Debtor.

It is true that the Railroad Company is not a debtor to the appellant. There is no legally-enforceable obligation on the part of the Railroad Company to pay the bonds secured by the Collateral Trust Mortgage, but it does have a very vital interest in the protection of its stock in the Steamship Company. It will be noted that the Railroad Company has paid at least one-half of the interest on the bonds issued under the Collateral Mortgage and that the interest on the Collateral Mortgage Bonds is not in default. While there is no legally-enforceable obligation on the part of the Railroad Company to pay said bonds, nevertheless, appellant has accepted from the Debtor interest payments of large sums throughout the years. The appellant does

not stand in the position of a grossly abused creditor. Negotiations had been conducted diligently for some time and the Court is advised that some progress is at the present time being made toward the liquidation of a substantial portion of the balance of the obligation to the appellant. These circumstances present no legal defense to the demand of appellant for the payment of its bonds or to the subjection of the security to such payment, but they are circumstances that call for consideration in the exercise of a sound discretion by the Court in a proceeding that deals with assets so vital to any feasible plan of reorganization of the debtor.

■ Granting, denying, continuing, or dissolving a temporary restraining order rests largely within the discretion of the Court. Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Foust v. Munson Steamship Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49; Metropolitan Life Ins. Co. et al. v. Murel Holding Corporation, 2 Cir., 75 F.2d 941; American Grain Separator, Co. et al. v. Twin City Separator Co., 8 Cir., 202 F. 202.

Another factor that may have influenced the Court in making its order is that the Government has taken over all the vessels of the Steamship Company and for the duration of the war it is not an operating or going concern. If its stock were sold under present conditions, it is not unreasonable to assume that at a sale it would bring a mere fraction of its potential value. Furthermore, the steamship line might be of little value, in excess of its physical properties, except to the railway system. It stands to reason that the Railroad Company at any sale of the stock of the Steamship Company would be the most avid bidder, but the Railroad Company is in bankruptcy, struggling to produce a plan for its reorganization, and if its valuable and essential assets are whittled away at the instance of first one creditor and then another, acting for their several and selfish advantages, the task of reorganization would be rendered more difficult. These considerations doubtless influenced the Court below in the exercise of its discretion.

■ It will be noted that the order does not deny with finality, nor dismiss, the petition of the appellant, but merely continues same until June 19, 1943, at which time the appellant's petition may be again called up. The question, therefore, is whether the lower Court abused its discretion in continuing the appellant's petition until June 19, 1943. The granting of a continuance is also largely a matter of discretion.

■ Appellant also appealed from the order of December 23, 1942, directing the Trustee to pay certain interest installments due on the First, and on the Consolidated, Mortgage Bonds. The funds from which these interest payments were ordered were subject to no preferential right of appellant. It was not a creditor of the debtor corporation, and it had no prior legal right or preferential claim to the funds from which the interest payments were made. Its position is, that the Court should not pay out money to other creditors of the Debtor while restraining it from enforcing its obligation. Its argument overlooks the fact that the interest on its obligation had been paid in full while no interest had been paid on the bonds of the First and Consolidated Mortgages for many years. It was not an abuse of discretion for the Court to apply interest payments to older obligations, nor to apply the fund to the payment of obligations which had a first right thereto.

In the light of the above considerations we cannot say that the lower Court abused its discretion in making either of the orders embraced in this appeal.

We do not mean to hold, however, that so long as the bankruptcy proceedings are pending the Court would be justified in restraining the appellant from the exercise of its legal rights in the enforcement of its security. It should not be indefinitely restrained. To do so would be an abuse of discretion, and unless a feasible plan of reorganization is seasonably presented appellant should be allowed to proceed. The lack of due diligence on the part of the Debtor in proceeding to a reorganization will not be rewarded by a favorable exercise of the Court's discretion to the material prejudice of appellant, but we cannot say that the continuance heretofore granted by the lower Court, under the circumstances, was an abuse of discretion.

The orders appealed from, therefore, are affirmed.