## REAMS, Collector of Internal Revenue, v. VROOMAN–FEHN PRINTING CO.

### No. 9573.

Circuit Court of Appeals, Sixth Circuit.

Jan. 31, 1944.

As Amended on Denial of Rehearing

April 5, 1944.

W. F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and Paul S. McMahon, all of Washington, D. C., and Don C. Miller and F. B. Kavanagh, both of Cleveland, Ohio, on the brief), for appellant.

Gustavus Ohlinger and Arthur E. Schroeder, both of Toledo, Ohio, (Arthur E. Schroeder, Zachman, Boxell, McCreery & Schroeder, Gustavus Ohlinger, and Beckwith, Ohlinger, Koles & Wolf, all of Toledo, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and Mc-ALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, Collector of Internal Revenue, pursuant to statutory authority (Internal Revenue Code, 26 U.S.C.A. § 3612) made returns and assessed against the appellee $22,488.41, the aggregate of delinquent taxes, interest and penalties claimed to be owed by appellee under the Federal Insurance Contributions Act, Internal Revenue Code, 26 U.S.C.A. chap. 9, sub-chap. A, § 1400 et seq., 53 Stat. 175, and the Federal Unemployment Tax Act, Internal Revenue Code, 26 U.S.C.A. chap. 9, sub-chap. C, § 1600 et seq., 53 Stat. 183.

Appellee is an Ohio corporation and from January 23, 1914, to and including June 1, 1937, was engaged in the job printing business in which it used buildings, machinery and equipment, all of which it owned. For the calendar year 1930, and subsequent years until June 1, 1937, appellee's business was unprofitable and on April 21, 1937, all of its stockholders (being five in number) by appropriate corporate action, determined to discontinue its business and lease its physical assets including its customer's list. In May 1937, appellee gave written notice to its customers, suppliers and employees (about thirty-two in number) of its intention to terminate business June 2, 1937.

April 14, 1937, sixteen of appellee's employees and stockholders formed a limited partnership under the laws of Ohio. June 1, 1937, this partnership leased from appellee for a period of one year its plant and equipment, and during said year continued the business as a going concern. On the termination of this lease, the partnership dissolved and June 1, 1938, fifteen or sixteen of its members formed a general partnership and acquired a new lease from appellee for a period of one year, the latter lease being of the same effect and tenor as the earlier one. Each lease provided that "in order to accomplish the financial responsibility of the partnership as a whole, to unify the efforts of all the individual partners and to provide a duly authorized agent for the conduct of the business of the partnership with other persons, Seaman G. Vrooman," president and majority stockholder of appellee, was designated senior partner vested with sole authority to act on behalf of the partnership.

The consideration for each of the leases was that the lessee would maintain the buildings and machinery covered by the lease in good condition, pay all taxes and assessments on the property, all insurance premiums and would pay to the lessor an amount equal to the depreciation accruing upon the buildings and equipment during the tenure of the leases, the rate of depreciation being equivalent to that claimed by the lessor in determining its income and excess profits tax liability. The lessee covenanted to carry on continuously the job printing business as theretofore conducted by appellee and that within ten days after termination of the lease the lessee would pay to the lessor in addition to the depreciation reserve, a sum equal to fifty percent of all funds accruing to the partnership during the year, less partnership liabilities and $38,800 which sum was to be distributed to the partnership members as the interest of each partner appeared under the partnership articles.

The respective partnerships filed employers' tax returns with the Collector of Internal Revenue for the Tenth District of Ohio, at Toledo, Ohio, under Titles 8 and 9 of the Social Security Act, 26 U.S.C.A. Int.Rev.Code, §§ 1400 et seq. and 1600 et seq.) and paid all taxes shown to be due on said returns and the Collector for the district was promptly advised that appellee had ceased to conduct the business under its corporate name. The partnerships also, in accordance with the requirements of the Unemployment Tax Act of the State of Ohio Gen.Code, § 1345-1 et seq., likewise prepared and filed all required returns and paid the taxes appearing due and payable to the State of Ohio.

Sometime prior to August 5, 1941, the Field Agents of the Treasury Department examined the books and records of the appellee and also of the partnerships and on February 24, 1942, the Treasury Department advised the appellant Collector of Internal Revenue that in the opinion of the department appellee was the employer of all the employees of the so-called partnerships and the individual members. Acting under the directions of the Commissioner of Internal Revenue, appellant, prior to May 11, 1942, prepared returns in appellee's name for the tax periods from June 1, 1937, to and including March 31, 1942, under Titles VIII and IX of the Social Security Tax Laws and requested appellee to execute said returns which it

refused to do and thereupon assessed appellee with the taxes, interest and penalties for the periods involved and demanded payment which appellee refused. Subsequently, appellant made other returns in the name of the appellee for the period from June 1, 1937, to and including March 31, 1942, and followed the same course as with the previous assessment, and with a like result.

On May 13, 1942, appellee filed with the Treasury Department abatement claim for the deficiency taxes assessed May 11, 1942, which claim is still pending.

Appellee filed this action July 27, 1942, seeking to enjoin the collection of all of the assessments herein described because illegal. The court granted the relief prayed, hence this appeal.

Appellee owns buildings, machinery and equipment of a value of more than $60,000 without encumbrances. At the date appellee filed its petition, its current indebtedness was $2,291.86 and it had on hand cash of $5,479.70. Appellee has attempted to borrow a sum on its unencumbered assets sufficient to pay the taxes, interest and penalties demanded of it by appellant but has been unsuccessful.

█ The principle that a taxpayer may not bring a suit in equity for the purpose of restraining the assessment or collection of a tax has long existed. Public necessity gives the rule vitality. The Internal Revenue Code, 26 U.S.C.A. § 3653, codified the limitation upon the equity powers of federal courts to restrain the collection of taxes and fortified the policy of allowing the government to be unhampered in the collection of its revenue. No independent equity jurisdiction appearing, the statute applies, even where the collection or assessment of the tax is unwarranted. Graham v. Dupont, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965; Keogh v. Neely, 284 U.S. 583, 52 S.Ct. 39, 76 L.Ed. 504. Unless there is a clear showing that a taxpayer will suffer a wrong without any other remedy, neither the validity or accuracy, nor the constitutionality of a tax may be tested in an action brought to restrain its collection only and it is immaterial that the collection of the tax is wholly void or that the object sought to be taxed is beyond the purview of the taxing statute. The concept of the statutory prohibition against the injunction is what the revenue statutes prescribe a complete method for the ultimate determination of the correct tax and that since the taxpayer has a proper remedy thereunder, the courts will not interfere with the summary collection of the taxes.

U.S.C.A., Int.Rev.Code, Title 26, Section 1400, provides in substance that social security taxes shall be levied, collected and paid upon the income of every individual equal to a percentage of the wages received by him. Section 1401 requires that the employer of the taxpayer shall collect the tax of the employee and deduct the amount thereof from his wages when paid and that the employer shall be liable for the payment to the Collector of the taxes so withheld. Section 1430 makes applicable to the Social Security Act all provisions of law including penalties applicable under the Internal Revenue Code, 26 U.S. C.A. § 2707.

Appellee insists that since it is not the "taxpayer" under Section 1401, the exactions demanded of it by the appellant are not taxes and that therefore Section 3653 is inapplicable to so much of the alleged taxes in question as are due and payable from its so-called employees.

██ The Internal Revenue Code, 26 U.S.C.A. § 3797(a) (14), defines the term "taxpayer" to mean any person subject to a tax imposed by this title. Any person liable for a tax is subject to a tax and comes within the statutory definition of a taxpayer. The purpose of the statutory prohibition against injunction is the avoidance of vexatious injunctive suits interfering with the government in collecting revenue for governmental purposes and the force of the statute would be dissipated if it were made inapplicable to the person whose statutory duty is to pay taxes, although such taxes were collected by the payor from another taxpayer.

█ Appellee also urges that the prohibitive statute has no application to the interest and penalties assessed against it by appellant, relying on Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Corporation v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318. Internal Revenue Code, 26 U.S.C.A. § 2707 (a), provides that all penalties shall be assessed and collected as part of delinquent taxes. The cases on which appellee relies relate solely to penalties and because of this are inapplicable to the case at bar.

It is true that Section 3653 of Title 26 U.S.C.A. Int.Rev.Code, does not specifical-

ly include penalties as such. However, those here in question are an integral part of the tax and interwoven into it. They are administrative penalties and are within the impeding statute just as much as primary taxes. McDowell v. Heiner, D. C.Pa., 9 F.2d 120, affirmed 3 Cir., 15 F. 2d 1015, certiorari denied, 273 U.S. 759, 47 S.Ct. 473, 71 L.Ed. 877.

■ Appellee claims there are present in the case extraordinary and unusual circumstances which would impel the court to waive the statute and to use its broad equity powers to prevent appellee from being subjected to what it believes to be irreparable mischief and injury at the hands of appellant. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. Appellee bases its prayer for the court's aid on the grounds that appellant, if permitted to proceed, will cause a destruction of appellee's estate and if it is required to pay taxes on behalf of its alleged employees, it will be forced to resort to a multiplicity of suits in order to recover such taxes from such employees. Appellee also claims that the Collector will continue to make returns on its behalf for taxable periods and will assess additional taxes thereon as they accrue. It further claims that because of the delay of the Collector in assessing and demanding the taxes here in question, appellee has lost the benefit of the ninety percent credit which it might have obtained under the provisions of 26 U.S.C.A. Int.Rev.Code, § 1601.

The Internal Revenue Code, 26 U.S.C.A. § 2703(a), provides for the refundment of all erroneous payments of taxes, interest or penalties. Treasury Regulations 106, Section 402.704, provide that refund claims are to be made by the person who paid the tax, penalty or interest to the Collector. However, paragraph (b) of this section provides that an employer must file with his claim for refund of the employee's tax, a statement that he had repaid the tax to the employee or has secured the written consent of such employee to the allowance of the refund claim. It is clear from the statute and regulations that if an employer has paid the taxes of an employee without first collecting such taxes from such employee, the employer is entitled to a refund for all erroneous taxes, interest and penalties so paid.

The power to distrain property for the payment of taxes is an ancient and effective method of collection which has been provided for in all of the Revenue Statutes. The Internal Revenue Code relating to the levying of distraint and the sale of property thereunder provide a method of obtaining the full price therefor at a public sale. All of the assets of appellee are subject to distraint and sale in satisfaction of its delinquent taxes and under the Code provisions the fair value of these assets would be realized at a public sale. Under the refunding provisions of the statute, appellee could recover all it had lost by such sale, assuming it owed none of the taxes, interest and penalties assessed against it. It will thus be seen that appellee has a fair and reasonable redress and the denial of an injunction on this account would not work irreparable injury. Whatever wrong appellee suffers could be remedied by a money consideration.

The case of Midwest Haulers v. Brady, 6 Cir., 128 F.2d 496, is unlike the case at bar. The taxpayer there was a common carrier and its principal assets were certificates of convenience and necessity granted it pursuant to the provisions of Motor Carrier Act 1935, 49 U.S.C.A. § 301 et seq., such property not being subject to sale. The Collector proposed to distrain and sell the rolling stock of the taxpayer in satisfaction of delinquent taxes, interest and penalties. Such a sale would have left the taxpayer's franchises barren and worthless and the taxpayer without recourse to recoup his loss. The case of John M. Hirst & Co. v. Gentsch, 6 Cir., 133 F.2d 247, is also distinguishable from the case at bar. There the facts showed that if collection of the taxes was enforced by distraint, appellant's business as a going concern would be destroyed. It is clear from the facts in that case that the value of certain intangible assets which the taxpayer owned like those in the Midwest Haulers would have been destroyed by the sale of tangible assets and the loss of the intangibles could not be recovered in money.

According to the facts urged on us by appellee its only business is owning and leasing property. It has no good will or other intangible assets which would be destroyed by a sale of its tangible assets.

■ Hardship in raising money with which to pay taxes is now common to all taxpayers, but this is not a special circumstance conferring equity jurisdiction on the courts to prevent collection by in-

junctive process. State of California v. Latimer, 305 U.S. 255, 262, 59 S.Ct. 166, 83 L.Ed. 159.

The facts here do not present a case within the jurisdiction of equity to avoid a multiplicity of suits. If appellee is not within the taxing statute, which issue we in no way decide, it will not have to resort to suits against its employees for contribution because as we have heretofore pointed out, it can recover all of the alleged illegal exactions by claims for refund and, if denied, by a suit at law. Conversely, if appellee's business is within the taxing statute, the fact that it failed to collect the tax due from its employees would be no ground for relief in this action. Appellee's points that appellant will persist in making illegal assessments against it and that it has been deprived of credits under Title 26 U.S.C.A. Int.Rev. Code, § 1601, may be considered together. The Social Security Act was approved August 14, 1935, and its taxing provisions became effective January 1, 1936 (49 Stat. 639). According to appellee's contention, it ceased all operations on June 1, 1937, and entered into the leasing contract with the so-called partnership prior to that time. One of the purposes of cessation of appellee's business and the forming of the partnerships was to avoid the payment of social security taxes.

Title 26 U.S.C.A. Int.Rev.Code, § 1420 (c), provides that social security taxes shall be collected and paid in such manner and at such times and under such conditions as may be prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury. The Internal Revenue Code, 26 U.S.C.A. § 2702 (a), applicable to the Social Security Act, provides that taxes shall, without assessment by the Commissioner or notice from the Collector, be due and payable at the time fixed for filing the return. Regulations 106, Sec. 402.601, provide that every employer shall make a tax and information return in quarterly installments beginning March 31st. The partnership commenced business during the taxable period from April 1st to June 30th, both dates inclusive. The first return after the partnership commenced business if appellee was an employer was due July 31, 1937, under Regulations 106, Section 402.606. Internal Revenue Code, 26 U.S.C.A. § 3772(b), provides that a suit may be maintained for the recovery of an erroneous or illegal tax whether or not such sum or tax has been paid under protest or duress.

Voluntary payment of the taxes for the month of June 1937, which was a small sum would not have exposed appellee to irreparable injury since the amount paid with interest could have been recovered if not due. It is true appellee would have been subjected to delay of six months before instituting suit for recovery if the Commissioner had failed to act earlier on its claim for refund, but such delay would not have permitted the accrual of the taxes with which appellee is now confronted without a determination of its taxable status in a proceeding at law.

It is well settled that "equity aids the vigilant." Injunctive relief is reserved for those who manifest reasonable diligence in asserting their rights to equitable protection. Such relief will be denied to the slothful where the power of the court, if exercised, places another in a position from which he will be unable to extricate himself without great injury or damage.

As early as 1937, appellee could have instituted an action seeking the same relief it now asks but it elected to leave the question of its taxable status open until a large sum in alleged taxes had accrued against it and the collection thereof had become jeopardized.

The Internal Revenue Code provides a reasonable method for a taxpayer to have a legal determination of his taxable condition under excise tax laws and injunctive relief against the payment of such taxes should be denied in all cases where the taxpayer has not been vigilant in prosecuting his remedies at law, even though it is made to appear that a heavy burden has been imposed on the taxpayer by the delay of the government officials in seeking him out and demanding payment of past due taxes.

Judgment reversed and cause remanded with directions to dismiss appellee's petition.