**James L. ENOCHS, United States District Director of Internal Revenue for the District of Mississippi, Appellant,**

v.

**T. O. GREEN, Appellee.**

**No. 17666.**

United States Court of Appeals
Fifth Circuit.

Sept. 25, 1959.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice,

Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., I. Henry Kutz, Atty., Fred E. Youngman, Grant W. Wiprud, Dept. of Justice, Washington, D. C., for appellant.

Roland J. Mestayer, Jr., Thomas R. Ward, Meridian, Miss., for appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

T. O. Green, the appellee, brought suit against the District Director of Internal Revenue for the District of Mississippi. In the complaint it was alleged that Green was the major stockholder and an officer of Biloxi Packard Motor Company, Inc., a now defunct corporation which had its place of business at Biloxi, Mississippi. The year 1953 was the last year of the operation of the corporation. Social Security and withholding taxes were deducted by the corporation from the wages of its employees but were not remitted by the corporation to the United States. On April 23, 1956, after the corporation had been liquidated, the District Director assessed a penalty against Green under the provisions of Section 2707(a) of the Internal Revenue Code of 1939,[1] levied upon his bank account and was taking steps to proceed against his salary. Asserting that the penalty so assessed was a deficiency under Section 272 of the Internal Revenue Code of 1939[2] requiring the issuance of a ninety-day letter with a right to petition the Tax Court, before any assessment was made, the taxpayer, Green, claimed the assessment was invalid. Injunctive relief against enforcement of the assessment by levy or otherwise was sought. The District Director moved to dismiss on the ground the Court had no jurisdiction to issue an injunction for the reasons (a) that no ninety-day letter is required, (b) that Green has an adequate remedy at law, and (c) the Internal Revenue Code prohibits injunctions in cases such as this. The Court issued a temporary injunction. The District Director has appealed.

Section 272(a) of the Internal Revenue Code refers to deficiencies in respect of the tax imposed by Chapter 1 of the Internal Revenue Code of 1939 relating to income tax. Similar provisions

1. "Any person who willfully fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700 (a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penalty may be assessed under authority of section 3612." 26 U.S.C.A. (I.R.C.1939) § 2707 (a).

2. "If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day), the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court. In the case of a joint return filed by husband and wife such notice of deficiency may be a single joint notice, except that if the Commissioner has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, duplicate originals of the joint notice must be sent by registered mail to each spouse at his last known address." 26 U.S.C.A. (I.R.C.1939) § 272(a) (1).

defining deficiencies are made in Section 870 with respect to estate taxes imposed by Chapter 2, and in Section 1011 with respect to gift taxes imposed by Chapter 3. The Employment Tax which is sometimes known as the Social Security Tax is imposed by the Federal Insurance Contributions Act and is incorporated into the 1939 Code as Subchapter A of Chapter 9 (§§ 1400–1432). This tax is different from and is not related to the taxes imposed under Chapters 1, 2, and 3 of the Code of 1939. The Income Tax at the Source Payable from Wages, known as the Withholding Tax, is imposed by Subchapter D of Chapter 9 of the Internal Revenue Code of 1939 (§§ 1621–1636). It is a "tax in respect of the wages of" employees. § 1625(a). It is referred to as the "tax under this subchapter." There are references to "the tax imposed by subchapter A" and "subchapter D" §§ 1635(a), 1636(a). The so-called Withholding Tax is treated in the statutory scheme as a tax different from, although related to, the Income Tax imposed by Chapter 1. The fact that the Withholding Tax is an income tax does not make it, of course, a tax imposed by Chapter 1. This is further shown by the Chapter 1 provision that

"The amount deducted and withheld as tax under Subchapter D of Chapter 9 * * * shall be allowed as a credit to the recipient of the income against the tax imposed by this chapter * * *." 26 U.S.C.A. (I.R.C.1939) § 35.

In Subchapter E of Chapter 9 of the 1939 Code are general provisions applicable to the taxes imposed by the other Chapter 9 subchapters. In Subchapter E are the following provisions:

"The amount of any tax imposed by subchapter A of this chapter or subchapter D of this chapter shall (except as otherwise provided in the following subsections of this section) be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." 26 U.S.C.A. (I.R.C. 1939) § 1635(a).

"Where the assessment of any tax imposed by subchapter A of this chapter or subchapter D of this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer." 26 U.S.C.A. (I.R.C.1939) § 1635(d).

There are no Chapter 9 provisions, such as are so fully set forth in Chapters 1, 3 and 4, requiring notices of deficiency assessments with a right of petitioning the Tax Court before any distraint can be made. Had the Congress intended that such procedures should be required in the collection of taxes imposed under Subchapters A and D of Chapter 9, such requirements would have been expressly provided. Since it was not so provided, we think it was not so intended.

One of the purposes, probably the primary purpose, of the deficiency notice is to permit the taxpayer, if he wishes, to seek a review of the Commissioner's determination by the Tax Court.

■ Our conclusion that no deficiency notice is required before distraining for social security and withholding taxes is consistent with the statutory provisions creating and fixing the jurisdiction of the Tax Court. The Tax Court has not been given a general overall jurisdiction to review tax determinations of the Commissioner. On the contrary,

"The Tax Court and its divisions shall have such jurisdiction as is conferred on them by chapters 1 [Income Tax], 2 [Personal Holding, Excess Profit and Unjust Enrichment Taxes], 3 [Estate Tax], and 4 [Gift Tax] of this title, by Title II [Income Tax] and Title III [Estate Tax] of the Revenue Act of 1926, 44 Stat. 9, or by any laws enacted

subsequent to February 26, 1926." 26 U.S.C.A. (I.R.C.1939) § 1101.

So it seems that the Tax Court has no jurisdiction to review determinations of the Commissioner with respect to social security taxes or withholding taxes.

▮▮▮ By Section 3661 of the 1939 Code it is provided that,

"Whenever any person is required to collect or withhold any internal-revenue tax from any other person and to pay such tax over to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U.S.C.A. (I.R.C.1939) § 3661.

If this were a case where a penalty had been imposed for the non-payment of a tax withheld on tax-free covenant bonds, or on the income of a non-resident alien, or on the income of a foreign corporation pursuant to the Chapter 1 provisions of Section 143 or Section 144, 26 U.S.C.A. (I.R.C.1939) §§ 143, 144, it seems that distraint for the collection of such penalty could be enjoined unless a deficiency notice had been given. Houston Street Corporation v. Commissioner, 5 Cir., 1936, 84 F.2d 821; G.C.M. 17274, C.B. 1937–1, p. 159. Such is not the case before us. The fund for which the appellee was responsible did not arise from a tax where notice was required before distraint. The penalty payable by an employer who has deducted such contributions and taxes from the wages of employees and failed to remit is not a deficiency and the ninety-day notice is not required. See McAllister v. Dudley, D.C. W.D.Pa.1956, 148 F.Supp. 548; 9 Mertens Law of Federal Income Taxation Ch. 49, p. 215, § 49.210. This being so, there is no right to the ninety-day notice and no right to petition the Tax Court. Unless some equitable ground is shown for

staying the collection, an injunction should not issue. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; United States v. Curd, 5 Cir., 257 F.2d 347, certiorari denied 358 U.S. 920, 79 S.Ct. 290, 3 L.Ed.2d 239. The avenue is open for Green to pay, file a claim for refund and bring suit to recover in the event the penalty is improperly assessed. The hardships to Green, of which he complains, of having his bank account and his salary levied upon are not circumstances which will permit collection to be stayed by injunction. Reams v. Vrooman-Fehn Printing Co., 6 Cir., 1944, 140 F.2d 237; 26 U.S.C.A. (I.R.C. 1939) § 3653.

Deciding, as we do, that the appellant had no right to a deficiency notice nor to petition the Tax Court for a determination of his liability, the cause will be reversed and remanded with directions to vacate the injunction and dismiss the complaint.

Reversed and remanded.

CAMERON, Circuit Judge (dissenting).

### I.

It is the pride and boast of this nation that it derives its support in the main from taxes paid by the average citizen. It is axiomatic that statutes of the character with which we are dealing are valid only if their language is so clear and explicit as to be understandable by the average man. Such an average man, faced with the maze of legal lore upon which the appellant relies—in the brief he cites thirty statutes, some with a dozen subsections, four reports of congressional committees, four Treasury Regulations, and thirty-one court decisions, besides other items from text books, bulletins, etc.—would be likely to find himself bewildered and amazed that such an amorphous mishmash could be conjured up to confuse and befuddle those who are required to fill the coffers of the federal treasury.

Nobody, it seems to me, could begin to follow the peregrinations of the argu-

ment presented by the appellant except a lawyer of unusual intelligence, perspicacity and ability, with special training in the mysteries of tax law. We are admonished that all doubts are to be resolved in favor of the taxpayer, Gould v. Gould, 1917, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; Stephan v. Commissioner, 4 Cir., 1952, 197 F.2d 712; Merten's Law of Fed. Income Taxation, Vol. 1, § 3.05, p. 10, especially when he is being subjected to heavy penalties. And I think we should strain hard to deal justly and generously with the taxpayer when, as here, his government has drafted him as a tax collector without pay and has made him liable to grievous penalties as a fiduciary in connection with the funds he collects.

The majority has journeyed into the wilderness where the appellant has led, and has come up with the conclusion that the taxpayer now before us, having lost his automobile business and been pursued to the employment he was forced to seek, owes his government a penalty levied by Chapter 25 of the Revenue Code of 1939, subchapter (a). The chapter is headed: "Firearms;" the subchapter: "Pistols and Revolvers." Doubtless appellee, the average man, has the feeling that this is a strange place in which to land. I am unable to comprehend appellant's argument, which the majority has found convincing, or to join in its action in dismissing appellee's complaint and dissolving the injunction granted by the court below.

## II.

There is no simple route to an intelligent conclusion in the face of the complexities with which this appeal has been invested. By approaching the problem from the unsophisticated standpoint of the average man, however, I think a conclusion can be reached which is much more consonant with reason and justice, without doing violence to the essential structure of the system of tax collection.

## III.

Simply stated, appellee was called upon, through the coercive processes of the government to pay a penalty for the corporation's failure to turn over moneys which said corporation, in which he was interested, collected from its employees. These collections derived from three sources: Income taxes which the employees owed the government and which the corporation took from their wages under § 1621 et seq. of the 1939 Revenue Code; Employment taxes which said corporation deducted from the employees' wages under § 1400 et seq.; and amounts which the corporation was required to pay itself and hold as a trust fund to supplement said employment taxes; this obligation being imposed by § 1410 of said Code.

## IV.

Chapter 36 of the Revenue Code of 1939 is the one which provides the machinery for the collection of taxes, including the establishing of collection districts, investing Collectors with authority to make collections, and providing for tax liens and distraint and other coercive procedures.[1] Under the heading "General Provisions" in that chapter appears § 3661, which covers and fixes the liabilities of commandeered collectors such as appellee's corporation. This section, which it seems to me furnishes the key to the solution of this whole problem, reads as follows:

"3661. Enforcement of liability for taxes collected.

"Whenever any person is required to collect or withhold any internal-revenue tax from any other person and to pay such tax over to the United States, the amount of tax so * * * withheld shall be held to

1. The section of that chapter which prohibits suits to restrain assessment or collection of taxes is § 3653: "(a) Tax. Except as provided in sections 272(a), 871 (a) and 1012(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

To apply this provision involves only the discovery of the origin and nature of the fund collected and the penalties applicable with respect to taxes comprising such fund. It remains, therefore, but to identify the ingredients of the fund which was the source of the penalty and determine the nature of the provisions and limitations (including penalties) governing the taxes from which the fund derived. Every step taken by the Director in enforcing these statutes is fettered by the provisions of § 3661.

### V.

The main ingredient of the fund was the income taxes owed by the corporation's employees. Its obligation to collect this tax is imposed by Chapter 9, subchapter (d) of the Code headed: "Collection of Income Tax at Source on Wages." The particular section imposing this duty reads:

"§ 1622. Income tax collected at source.

"(a) Requirement of withholding. Every employer making payment of wages shall deduct and withhold upon such wages a tax equal to 18 percentum of the amount * * * "".

Following this requirement are some thirty pages of tables and detailed requirements as to handling, all of which have, at the top of the respective pages: "Income Tax at Source." These are the standard income tax tables. The whole process consists of a payment by the employee of his income tax to the government through the convenient means of having his employer deduct his income tax from his wages and remit it direct to the government. It is difficult indeed for me to visualize a naivete which would regard this whole arrangement as anything but the payment by individuals of

their income tax to the government through the simple expedient of having the employer deduct and remit it.

Moreover, employers are required under penalty to give the employees receipts showing the amount withheld, and the employees are credited with the amounts shown by such receipts on their income tax liability.

As applied to these income taxes withheld by the employer, what, then, is the meaning of the closing sentence of § 3661: "The amount of such fund shall be assessed, collected, and paid in the same manner and *subject to the same provisions and limitations (including penalties) as are applicable * * * to the taxes from which such fund arose"?* [Emphasis supplied.] Bearing in mind that the section deals only with persons required to collect or withhold taxes, the quoted language can have no meaning at all unless it means that the penalties visited upon the nonperforming vicarious collector shall be the same penalties as would be applicable to the employee if he failed to pay the tax, and that all provisions and limitations applicable to such a delinquent employee would be applicable also to a delinquent employer-collector.

There is no dispute about the treatment which would be accorded the employee if he had failed to pay his tax. § 272(a) of the Code of 1939 provides that a ninety-day letter must be sent such a taxpayer, with his right to contest the tax before the Tax Court before payment; and the prohibitions of § 3653(a) against distraint are specifically lifted where that procedure is not followed.

To penalize the employer-collector in a situation where no penalty could possibly be visited upon the taxpayer himself is, in my judgment, to read out of the statute § 3661 and to place the government in a more favored position in the assessment of penalties than it is in the assessment of taxes. The court below, evidently following this relatively simple course of reasoning, held that it had jurisdiction to give the same relief to the employer who did not owe the tax as it

**564**

would have been bound to give the employee who did owe the tax. It could not, in my judgment, have done less.

It appearing thus entirely clear that appellee was entitled to at least part of the relief sought under Rule 54(c) F.R. Civ.P., 28 U.S.C.A., the court below could not dismiss his action. And no one would dispute that the trial court had the discretion to maintain the status quo by issuance of temporary injunction. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, and Central Hanover Bank & Trust Co. v. Callaway, 5 Cir., 1943, 135 F.2d 592. Consideration of the case could end here, but the importance of the questions involved warrants further discussion of penalties and coercive sanctions generally, which, under the majority opinion, may be applied by the tax gatherers in the enforcement of the revenue laws in this and like cases.

## VI.

Brief notice should be given to the other two items making up the fund whose nonpayment was made the basis of the penalty enjoined. § 1400 of the 1939 Code levied "upon the income of every individual" a tax with respect to wages received by him at the rate of one and one-half per centum. Here, also, is a plain tax upon income. The following section imposed upon the employer the duty to collect the tax "by deducting the amount of the tax from the wages as and when paid." It is difficult to perceive that Congress intended that any penalties or procedures should apply other than those prescribed as to income taxes in general.

But we are not relegated to speculation, for Congress provided in § 1430 that "all provisions of law, including penalties, applicable with respect to any tax imposed by section 2700 or section 1800, and the provisions of section 3661, shall insofar as applicable * * * be applicable with respect to the taxes imposed by this subchapter." Even assuming that Congress intended that the measure of the penalty applying to pistols and revolvers (§ 2700) or that levied with respect to bonds, debentures and the like (§ 1800) (including playing cards) should govern in penalizing the employer, it is only logical to assume that it intended that the mechanics of collecting the penalties should be the mechanics provided in the other statute mentioned (§ 3661) since the first two mentioned statutes deal with the levying of taxes, not their collection,[2] and § 3661 is made universally applicable by the use of the conjunctive "and."

One looks in vain through the jumbled array of statutes cited by appellant to find any congressional enactment bearing a closer resemblance to the tax levied by § 1400 than those contained in Chapter 1 dealing with taxes on individual income. Except for the provisions of § 1400, the withheld wages of the individual employee would go into his pockets as income, and, moreover, the statute levying the tax refers to it as income. Where, as the appellant seems to contend, there is a blind spot in the tax structure wherefrom the appellant acquires a discretion as to modes of collection, it is the essence of logic that the mode selected should be related to something like it if it can be found; it is the height of illogic, in my judgment, to link it to firearms with which it has no relationship at all.

Here, then, is a fund, referred to in the statutes themselves as income, which aggregates nineteen and one-half per cent of the employee's wages. In addition, the contribution of the employer is fixed at one and one-half per cent. To treat all three items alike is to recognize the homogenity of the exactions constituting the fund. In my opinion, therefore, the court below had jurisdiction of the entire penalty based upon the aggregate of

2. The same reasoning applies also to the tax of one and one-half per cent the employer was required to pay under § 1410 of the 1939 Code which, too, comes under the protective aegis of § 1430. This is true even if it be considered that the employer's contribution is entitled to be catalogued as a tax collected or withheld from another person.

the three items and it did right in treating the aggregate as income and in applying the sections of the law under which the sovereign deals with those required to pay income tax.

Be that as it may, the penalty was a unit, not being broken up by appellant into fractions applicable to the items composing the delinquent fund. The court below was compelled, therefore, to deal with the entire penalty as a single unit and, in my opinion, did the only thing it could have done in assuming jurisdiction of appellee's action in all of its parts.

### VII.

This conclusion is fortified by a consideration of the history of congressional dealing with penalties in tax matters. Such a consideration ought perhaps to begin with the concession I understand to be unquestioned by anyone that if the case before us were being tried under the 1954 Internal Revenue Code, there would be no doubt at all that appellant would be entitled to a ninety-day letter and to injunctive relief if that procedure was not followed. That being true and it being universally conceded that the 1954 Code was merely a clarification of the then existing law, we should, in my opinion, seek to find a solution of the question before us in harmony with the 1954 Code. One studying that Code and the steps taken in its adoption can, in my opinion, reach no other conclusion.

(a) The first, and for many years the only, section of the Internal Revenue Code providing for penalties for violation of provisions of the Code was § 2707 (a), Code of 1939, contained in the Firearms Chapter. The counterpart of this section was written into the first Internal Revenue Code and applied only to violations considered *mala in se*. This being the only section levying penalties, provisions making these "firearm" penalties applicable to other violations were incorporated into many new Code sections as the latter were drafted.

In 1924, the first Board of Appeals (now the Tax Court) was established so that the taxpayer against whom deficiencies and penalties were assessed might have a judicial forum to test the propriety of these assessments before levy and distraint by tax authorities. To clarify further the congressional intent, the Code of 1939 specifically stated in individual sections that penalties and additions to the tax were to be treated as a part of the tax.[3] These provisions reflect the intention that deficiency procedures contained in § 272(a), notice and right to appeal were to be vouchsafed as to those additions and penalties which were merely violations *mala prohibita*.

(b) § 6659 was manifestly included in the Code of 1954[4] to clarify existing law and to eliminate the confusion wrought by a few cases which erroneously held that penalties were not subject to deficiency procedures of § 272(a), Code of 1939.

Senate Committee Reports reveal that the object was to clarify the law as it existed in 1939:

"This section provides that the additions to the tax, additional amounts, and penalties provided by Chapter 68 shall be assessed, collected, and paid in the same manner as taxes, except where otherwise specifically provided in another section of this title. *This conforms to*

---

3. See, e. g., Sections 51(g), 291, 293, 871 (i), 1019, 1117(g), 1634(b), 1718(c), 1821(a), 3310(a–e), 3311, 3655, Internal Revenue Code, 1939, 26 U.S.C.A. §§ 51 (g), 291, 293, 871(i), 1019, 1117(g), 1634 (b), 1718(c), 1821(a), 3310(a–e), 3311, 3655.

4. "(a) Additions treated as tax.—Except as otherwise provided in this title—
"(1) The additions to the tax, additional amounts, and penalties provided

by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes;
"(2) Any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter." 26 U.S.C. § 6659(a), Internal Revenue Code, 1954.

*the rules under existing law.* By virtue of this section, it is unnecessary in other parts of the title to specifically refer to these additions to the tax when *providing rules as to the collection,* assessments, etc., of the taxes. This section also makes clear that the procedures for the assessment of deficiencies in income, estate and gift taxes (including 90-day letters and appeal to the Tax Court) also apply in additions to those taxes." [5]   [Emphasis added.]

(d) The above quotation leaves room for no conjecture as to the intention of Congress in enacting this section. The penalties involved in this controversy were imposed by the appellant under § 2707(a), Code 1939. Under the Code of 1954, these penalties would have been levied under § 6671. This section is identical in all material respects with the wording of § 6659, *supra.*[6] The commentary of the House and Senate Committees relating to this section reveals that there was intended no material change in the Code of 1939.[7] Clearly this section was included in the Code to clarify then existing law in respect to violations of the type involved in the case before us.

## VIII.

From the history above summarized and the nearly identical wording of § 6659 and § 6671, it is clear that the same operation and effect was intended for both sections as to the violations and penalties to which they relate. Moreover, it is clear that § 6659 and § 6671 did not change the law as Congress intended it to be in 1939. Rather, these sections clarified existing law so as to remove further the possibility of erroneous interpretation and better to accomplish the goal of symmetrical and harmonious application of those sections providing for additions to tax and penalties. It therefore follows that one single treatment should be afforded the penalties involved in this controversy, i. e., treated as a deficiency, giving notice and right to appeal.

The majority, holding as they do that the deficiency procedures of § 272(a), Code of 1939 have no application to taxes or penalties here, in my view, have chosen to disregard the foregoing considerations.

## IX.

The majority refers to McAllister v. Dudley, 148 F.Supp. 548, an opinion by the United States District Court for the Eastern District of Pennsylvania, to buttress its position that a penalty imposed on an employer for failure to remit income taxes withheld is not a deficiency, and that the ninety-day notice is not required. On the other hand, in Davis v. Dudley, 124 F.Supp. 426, the District Court for the Western District of Pennsylvania held that the imposition of the penalty there involved depended exclusively upon the judgment of the Commissioner and, in the absence of unequivocal language to the contrary, that type of penalty should be construed as a deficiency in order that the judgment of the Commissioner might be tested by the Tax Court as a safeguard against erroneous assessment and compulsory payment without review. These two cases from the same state have a tendency to cancel each other out. Moreover, in such cases as the one before us, where criminal as well as civil penalties are prescribed in the Code,[8] this consideration carries special significance.

---

**5.** Quoted from Senate Finance Committee Report, page 4568 U.S.Code Congressional and Administrative News, 1954.

**6.** This is further emphasized by the statement in Mertens Code Commentary to the effect that the provisions of § 6671 seem to be superfluous in view of § 6659. Mertens, Law of Federal Income Taxation Code Commentary, § 6671:1, Chapter 68, p. 12.

**7.** Senate Finance Committee Report, p. 4568, U.S.Code Congressional and Administrative News, 1954, so states in unmistakable terms.

**8.** See § 6671, § 6672 relating to civil penalties, and § 7702 relating to criminal penalties.

It seems to me a matter of principle, deep rooted in the American System, that the rights of one having this legally imposed duty of collecting taxes should not be subjected to the caprice of discretionary decision by the Director of Internal Revenue. Such an approach is contrary to the precept that punitive measures should not be taken by the government against any citizen prior to judicial determination of the issues involved. Being so convinced, I respectfully dissent.