MILLER, Collector of Internal Revenue, v. STANDARD NUT MARGARINE CO. OF FLORIDA.

No. 6049.

Circuit Court of Appeals, Fifth Circuit.

April 22, 1931.

See, also, 49 F.(2d) 85.

Harrison F. McConnell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., Raymond F. Brown, Sp. Atty., Bureau of Internal Revenue, of Miami, Fla., and W. P. Hughes, U. S. Atty., of Jacksonville, Fla. (Harrison F. McConnell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., Raymond F. Brown, Sp. Atty., Bureau of Internal Revenue, of Miami, Fla., W. P. Hughes, U. S. Atty., of Jacksonville, Fla., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

George N. Murdock, of Chicago, Ill., A. Y. Milam and Robt. R. Milam, both of Jacksonville, Fla., and E. T. McIlvaine, of Miami, Fla. (Geo. N. Murdock, of Chicago, Ill., A. Y. Milam and Robt. R. Milam, both of Jacksonville, Fla., and E. T. McIlvaine, of Miami, Fla., on the brief), for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from a final decree rendered in a suit brought by the appellee, the Standard Nut Margarine Company of Florida, a corporation, against the appellant, individually and as collector of internal revenue for the district of Florida, under which the appellant was perpetually restrained and enjoined "from collecting or attempting to collect, directly or indirectly, from the plaintiff (the appellee), or any dealer selling plaintiff's product Southern Nut Product, any pretended tax or imposition purporting to be levied or assessed against the plaintiff or said dealers under the Oleomargarine Act of August 2, 1886, as amended (26 USCA §§ 194, 207, 541 et seq.), on account of the manufacture and sale of the said Southern Nut Product referred to in the petition herein and manufactured by plaintiff." The allegations of appellee's petition or bill filed December 26, 1926, show as follows, the parties being herein referred to by their designation in the court below: Plaintiff is engaged, and has been engaged for more than two years, in the manufacture and sale in interstate commerce of a nut product known as "Southern Nut Product," manufactured and sold under its own distinctive name, said name not being in imitation of the distinctive name of any other product; said name is accompanied on the same label and brand with the name of the place where it is manufactured or produced; and said product contains no added poisonous or deleterious ingredients. Southern Nut Product is a mixture or compound consisting of cocoanut oil, peanut oil, salt, water, and harmless coloring matter, manufactured and sold for cooking, baking, and seasoning purposes. Southern Nut Product is packed and sold only in one-pound cartons, a sample of which was attached to the bill, and plaintiff sells and ships it to a great number of firms and persons located in many states of the United States outside of the state of Florida. Prior to plaintiff engaging in the manufacture and sale of said Southern Nut Product, an action at law had been brought against one Page, as collector of internal revenue for the district of Rhode Island, for the purpose of recovering from said collector the amount of taxes paid under protest by the Higgins Manufacturing Company on a product manufactured and sold by that company known as Nut-Z-All, which product was manufactured in the same way and of the same ingredients as Southern Nut Product is manufactured by plaintiff. After hearing the evidence submitted on behalf of both the plaintiff and the defendant in that case, it was held by the court that said product Nut-Z-All was not made in imitation or semblance of butter or intended to be sold as butter or for butter, and hence under the law was not oleomargarine and not taxable as oleomargarine. As a result of that decision the then Commissioner of Internal Revenue, with the approval of the then Secretary of the Treasury of the United States, published and promulgated Treasury Decision 3590, which was the text of the above-mentioned decision, and further informed all concerned that Nut-Z-All had been held by the court not to be oleomargarine and not taxable as oleomargarine. On August 20, 1924, the then Deputy Commissioner of Internal Revenue, in the reply to an inquiry made to the then Commissioner of Internal Revenue by the Institute of Margarine Manufacturers, an association of oleomargarine manufacturers, as to the taxability of said product Nut-Z-All, stated: "The product 'Nut-Z-All' was held by this office taxable as oleomargarine, but the decision was contested in the case of Higgins Manufacturing Co. v. Page (D. C.) 297 F. 644, wherein this product was held by the court to be not made in imitation or semblance of butter and not taxable as oleomargarine. The

court, having held the product to be not taxable as oleomargarine, the fact that retailers advertise and sell it as butter, or as a substitute for butter, would not render them or the manufacturers liable under the internal revenue law." Notwithstanding the above-mentioned decision in the case of Higgins Manufacturing Co. v. Page, the issuance of Treasury Decision 3590 based thereon, and the above-quoted statement contained in the reply to the inquiry of the Institute of Margarine Manufacturers, all of which were given extensive publicity throughout the trade, the then Commissioner of Internal Revenue, with the approval of the then Secretary of the Treasury, endeavored by Treasury Decision 4006, dated April 1, 1927, again to declare products similar to Nut-Z-All taxable as oleomargarine, if colored to look like butter.

In July, 1927, the said Higgins Manufacturing Company filed in the District Court of the United States for the District of Rhode Island a petition for a temporary injunction against Frank A. Page, as collector of internal revenue for the district of Rhode Island, asking the court to restrain the said collector of internal revenue from collecting a tax on Nut-Z-All and similar products as on oleomargarine. The injunction so prayed for was granted on July 18, 1927, and at the time of granting said injunction the court rendered an opinion which is reported in Higgins Manufacturing Co. v. Page (D. C.) 20 F.(2d) 948. In July, 1927, the Baltimore Butterine Company, of Baltimore, Md., petitioned the Supreme Court of the District of Columbia for a temporary and permanent injunction against the then Commissioner and Deputy Commissioner of Internal Revenue to restrain them from endeavoring to enforce said Treasury Decision 4006 against its nut product Nu-ine, which was identical in content and appearance with plaintiff's Southern Nut Product, and which was in content and appearance identical with Nut-Z-All. After hearing and due consideration, that court granted a temporary injunction and rendered an unreported opinion, which stated:

"I agree with the reasoning of the decision of Judge Lowell of the District Court of Rhode Island in Higgins Manufacturing Co. v. Page; that is one of the cases to which the Supreme Court referred in Dodge v. Brady, 240 U. S. 122, 36 S. Ct. 277, 60 L. Ed. 560, of extraordinary and exceptional circumstances.

"The bill alleges that the substance 'Nuine' involved in this case is the same as 'Nut-Z-All' which Judge Brown of the District Court held not subject to taxation under the oleomargarine act. Yet in spite of this judicial holding the defendant has attempted by a regulation to make all substances like to that involved in this suit taxable under the act. It is clear that the defendant by means of a mere regulation cannot enlarge the provisions of the act, and such a regulation cannot be enforced. There would be no end to litigation if the defendant should persist in levying a tax after the courts have held the tax invalid, and the injury to the plaintiff would be irreparable and the amount inascertainable."

On December 16, 1927, that court made said injunction permanent. In December, 1927, the United States District Court for the District of Rhode Island made permanent the temporary injunction theretofore granted against said Page as collector of internal revenue for the district of Rhode Island. No appeals were taken from any of the above-mentioned decrees. The plaintiff engaged in the manufacture of its product, Southern Nut Product, after the above-mentioned decisions had been rendered. Before engaging in the manufacture of its said product, plaintiff made inquiry of the defendant and in reply to that inquiry received from the defendant a letter which contained the following: "The Standard Nut Margarine Company has the same privilege of making a compound of the kind in question without taxpaying same as oleomargarine as is being enjoyed by those manufacturers who obtained favorable decisions from the courts."

Prior to the institution of this suit, the defendant threatened to collect a tax of 10 cents per pound upon plaintiff's Southern Nut Product, as upon the manufacture of artificially colored oleomargarine. In doing so, he acted in pursuance of a letter addressed to him by R. M. Estes, Deputy Commissioner of Internal Revenue, which, after stating that plaintiff "manufactures a so-called colored cooking compound under the name of 'Southern Nut Product' which is held to be taxable as colored oleomargarine," and that plaintiff had been assessed the sum of $5,000, which covers the tax on 50,000 pounds of Southern Nut Product estimated to have been produced during the month of January, 1929, stated: "All wholesale and retail dealers in 'Southern Nut Products' and other so-called cooking compounds found on the market in your district should be reported for assessment on subsequent lists unless they hold special tax stamps permitting them to sell colored oleomargarine." In the manufacture and sale by

plaintiff of Southern Nut Product, the net profit derived is approximately 3 cents per pound, and unless immediate relief shall be granted, the levy and collection of 10 cents per pound tax upon said product heretofore and now being manufactured by plaintiff will render plaintiff insolvent, and in addition make it liable to severe criminal penalties and the forfeiture of its factory and plant in which said product is made, together with all raw materials and manufactured product on hand. The enforcement of the above-mentioned demand of the Deputy Commissioner of Internal Revenue will render hundreds of wholesalers and thousands of retailers who have been and are now handling and selling plaintiff's product liable to said special tax, additional penalties, and severe criminal liabilities. The decree appealed from, which was rendered March 4, 1930, embodied a finding by the court that "the complainant has established the material allegations of the bill of complaint." The transcript contains a statement of evidence, which purports to contain the substance of the evidence introduced in the trial of the cause; but documents which were introduced in evidence and were made exhibits, and apparently being material parts of the evidence, are not set out in the transcript. The record is consistent with the conclusion that the evidence established the material allegations of the bill of complaint.

The following facts, of which we take judicial notice [Jacobs v. United States (C. C. A.) 45 F.(2d) 34], and of which the court below may have taken judicial notice, though no reference to them is found in the record on appeal, have a bearing on questions raised by the record: While this suit was pending in the court below, a bill to amend the definition of oleomargarine contained in the Oleomargarine Act as amended (26 USCA §§ 541, 546) was pending in Congress. The report of the Committee on Agriculture of the House of Representatives on that bill stated:

"The purpose of the amendment, in addition to clarifying the language of the act and including the fish oils and fats, as above briefly mentioned, is to bring a third class of fat compounds, in addition to the two specifically enumerated in the existing law, within the definition of oleomargarine, and therefore within the taxing and regulating power of the Bureau of Internal Revenue. * * *

"These so-called cooking compounds, made in this manner, are not clearly within the definition of oleomargarine as it is stated in the present law, and as this law is interpreted by the courts. * * *

"The evidence before the committee shows that the definition of oleomargarine in the present law is not sufficiently comprehensive to cover the fat and oil compounds that can and are being made to be so nearly like oleomargarine as to mislead the buying public."

Cong. Rec. Feby. 1, 1930. H. R. p. 2996 et seq.

A member of the House, in advocating the passage of that bill, said: "Since the passage of the oleomargarine act there has come into existence in the country a new butter substitute branded as a cooking compound, but which to all intents and purposes is intended to be and is sold as butter. These new cooking compounds, which we seek to bring within the purview of the oleomargarine law and under its provisions, are made principally of coconut oil, perhaps 80 per cent coconut oil, and the balance peanut oil, salt, and water." Cong. Rec. H. R. Jan. 31, 1930, p. 2907.

On January 10, 1930, Commissioner of Internal Revenue Lucas wrote a letter to Congress recommending the passage of such a bill, in which he said:

"In view of the injunction granted the Higgins Manufacturing Company of Providence, R. I., by the District Court of Rhode Island, enjoining the collector from collecting tax on their product manufactured from vegetable oils, salt, water and artificial coloring, no attempt has been made to assess stamp tax on Higgins Nut Product or to require the payment of special tax by dealers selling the same.

"The Standard Nut Margarine Co., of Jacksonville, Fla., was recently granted a temporary injunction by the United States District Court at Jacksonville, Fla., restraining the collector of internal revenue for this district from the collection of stamp tax upon the manufacture of the plaintiff's Southern Nut Product and from special tax upon its sale at wholesale and retail. It is understood that this case has been set for trial under date of February 24, 1930.

"In all probability numerous other injunction proceedings will be instituted restraining the collection of stamp and special taxes upon the manufacture and sale of these so-called colored cooking compounds, and while the bureau is of the opinion that they are unquestionably made in imitation or semblance of butter and should be subject to the tax imposed under the oleomargarine law, the only satisfactory solution of the problem appears to be through legislation, such as the passage of H. R. 10958, Seventieth Congress, first session, which specifically brings such

products within the classification of oleomargarine."

Cong. Rec. H. R. Feby. 1, 1930, p. 2999.

A letter of the same official to a Senator as to a then pending bill on the subject contained the statement: "Bill H. R. 6 was drafted to bring these so-called cooking compounds within the definition of oleomargarine as provided in the act of August 2, 1886, as amended by the act of May 9, 1902, and thus avoid the multiplicity of law suits and conflicting court decisions with which the Government was threatened in every attempt made to hold such products subject to the oleomargarine law." Cong. Rec. Senate. May 26, 1930, p. 9930. That bill was passed, being approved July 10, 1930. 46 Stat. 1022 (26 USCA § 541 and § 541 note). It provided: "This Act shall take effect one year after the date of its enactment."

In May, 1929, the United States District Court for the Southern District of Georgia decided that plaintiff's product, Southern Nut Product, is not an imitation of butter. Baltimore Butterine Co. v. Talmadge (D. C.) 32 F.(2d) 904. That decision was affirmed by this court prior to the rendition of the decree now under review. Talmadge v. Baltimore Butterine Co. (C. C. A.) 37 F.(2d) 1014.

The grounds principally relied on in behalf of the defendant to support the contention that the decree under review was erroneous and should be reversed are:

1. That the finding evidenced by the above-mentioned letter addressed to defendant by R. M. Estes, Deputy Commissioner of Internal Revenue, which stated that plaintiff's product, Southern Nut Product, was held to be taxable as colored oleomargarine, and that plaintiff had been assessed the sum of $5,000 on that product, was made final and not subject to judicial review by the following provision of section 14 of the Oleomargarine Act, as amended (26 USCA § 582): "And such commissioner is authorized to decide what substances, extracts, mixtures, or compounds which may be submitted for his inspection in contested cases are to be taxed under this Act; and his decision in matters of taxation under this Act shall be final." 24 Stat. 212.

2. That the maintenance of this suit is forbidden by the statute which provides that, "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 USCA § 154.

3. That this suit is not maintainable because the government is an indispensable party to such a suit, and is not a party, or subject to be made a party, thereto.

1. As above indicated, the allegations of the bill and supporting evidence showed the following: The so-called finding, evidenced by the above mentioned letter of the Deputy Commissioner of Internal Revenue, to the effect that plaintiff's product, Southern Nut Product, is colored oleomargarine, and taxable as such, was made when there was before the official who made that finding no contested case involving the question whether that product was or was not taxable under the law then in force. The way in which that action appears to have been taken persuasively indicates that it was based on an ex parte investigation, without any hearing of which plaintiff was notified, without plaintiff being given an opportunity to present evidence, and without the introduction or consideration of any evidence having a tendency to prove that plaintiff's product is such a one as was covered by the statute then in force. Before that action was taken several courts, as above stated, had decided in contested cases, to which the Commissioner of Internal Revenue, or his subordinate, was a party, that a nut product in content and appearance identical with appellee's product, Southern Nut Product, was not oleomargarine within the meaning of the statute then in force (21 USCA § 25) and was not taxable under that statute, and none of those decisions had been brought into question by an appeal therefrom. Before the action of the Commissioner of Internal Revenue in holding Southern Nut Product to be taxable as colored oleomargarine was proved in the court below in the trial which resulted in the decree now under review, this court had affirmed a decision to the effect that that product is not an imitation of butter. At the time of the admission in the court below of evidence of that action of the Commissioner of Internal Revenue, the Congress had before it for consideration a recommendation of that official that the then existing law be so amended as to bring such products within the classification of oleomargarine, the document containing that recommendation showing that that official was of opinion, not that such products were subject to the tax imposed by the law then in existence, but that they should be subject to such tax. At that time pending proceedings in Congress indicated that that body recognized that a change of the then existing law was required to make such products as plaintiff's Southern Nut Product subject to the tax imposed by the Oleomar-

garine Act. The evidence persuasively indicated that the action under consideration, whereby plaintiff's product, Southern Nut Product, was held to be taxable as colored oleomargarine, was unsupported by any evidence tending to prove that that product differed in any material respect from products which repeatedly had been judicially determined not to be subject to the tax imposed by the Oleomargarine Act, or that that product in any respect was other than the one in the manufacture of which plaintiff engaged after having been informed by the defendant to the effect that it was not subject to that tax. It appeared from the evidence that that action was taken in such circumstance that the basis of it was so unsubstantial as to be frivolous, that it was taken in contemptuous disregard of unappealed from court decisions to the effect that the then existing law imposed no tax on such a product, and amounted to an administrative attempt to coerce the payment of money the exaction of which the official who took that action thought ought to be authorized by law, but which he did not really believe was authorized by the then existing statute as uniformly construed by the courts. The basis of the claim that plaintiff's product was taxable as colored oleomargarine was so unsubstantial as to be frivolous, and the holding that it was so taxable was so 'arbitrary and capricious that it amounted to a mere administrative fiat, which, in effect, was no decision at all. Binderup v. Pathe Exchange, 263 U. S. 291, 306, 44 S. Ct. 96, 68 L. Ed. 308; Silberschein v. United States, 266 U. S. 221, 225, 45 S. Ct. 69, 69 L. Ed. 256; Interstate Com. Comm. v. Louisville & Nashville R. Co., 227 U. S. 88, 91, 33 S. Ct. 185, 57 L. Ed. 431. We conclude that the official action now in question, which purported to hold that plaintiff's product, Southern Nut Product, was taxable as colored oleomargarine, and whereby a so-called tax in the sum of $5,000 was attempted to be assessed, was not a decision within the meaning of the above set out statutory provision, and had no binding or conclusive effect.

■ 2. In several cases in which the Supreme Court of the United States had under consideration the above set out statute forbidding the maintenance of any suit for the purpose of restraining the assessment or collection of any tax, that court explicitly recognized that that statute does not prevent an injunction in a case apparently within its terms in which some extraordinary and entirely exceptional circumstances make its

provisions inapplicable. Hill v. Wallace, 259 U. S. 44, 62, 42 S. Ct. 453, 66 L. Ed. 822; Bailey v. George, 259 U. S. 16, 42 S. Ct. 419, 66 L. Ed. 816; Dodge v. Brady, 240 U. S. 122, 126, 36 S. Ct. 277, 60 L. Ed. 560. Though the court's statements to that effect were not necessary for the decision of any of the cases in which they were made, those statements plainly indicate a deliberate conclusion of that court as to the meaning and scope of that statute. In view of that court's expressed conclusion, certainly we would not be warranted in attributing to that statute the meaning or effect of preventing the interference by a court with the enforcement of any attempted exaction by a tax official under the guise of an assessed tax, however extraordinary and entirely exceptional the circumstances may be. That above-mentioned circumstances attending the attempted imposition of the purported tax the enforcement of which was enjoined by the decree appealed were extraordinary and entirely exceptional cannot fairly be denied. The product which was the subject of that threatened exaction —a mixture or compound consisting of cocoanut oil, peanut oil, salt, water, and harmless coloring matter—was not in existence until long after the enactment of the Oleomargarine Act. It was not made in imitation or semblance of butter, and was not a mixture or compound described in section 2 of that act (26 USCA § 541), which covered no mixture or compound containing any vegetable ingredient other than "vegetable oil annatto," which is a dyeing or coloring material used for coloring butter, cheese, etc. Nothing in that statute indicated an intention to tax such a mixture or compound as plaintiff's Southern Nut Product, or that the lawmakers, in enacting that statute, contemplated the possibility of such a mixture or compound being devised and coming into competition with butter. Before the so-called tax was attempted to be assessed several courts, in cases to which the Commissioner of Internal Revenue or his subordinate was a party, had decided that products identical in content and appearance with plaintiff's were not subject to the tax attempted to be imposed. The failure to appeal from any of those decisions amounted to an admission by the Commissioner of Internal Revenue that an attempt to impose that tax on such products as plaintiff's Southern Nut Product is not legally sustainable. The claim of the defendant that he was legally authorized to coerce the payment of the so-called tax, when that claim was attempted to be sustained in

the trial which resulted in the decree appealed from, was made in such circumstances as to be merely colorable, in effect a frivolous pretense that his action in that regard was in compliance with an official duty imposed by law, that claim then being made after it had been judicially determined several times, in suits to which defendant's official superior or the latter's subordinate was a party, that the statute relied on imposed no tax on products of identically the same kind as plaintiff's Southern Nut Product; after the defendant had influenced the plaintiff to engage in the manufacture of that product by informing him that it was not taxable under the Oleomargarine Act; after the defendant's official superior, by failing to have any of the just mentioned decisions appealed from and by recommending to Congress the enactment of a statute imposing a tax on such products, had in effect admitted that those products were not taxable under the then existing law as that law was construed by the courts; and after the lawmakers, by taking steps to impose a tax on those products, had recognized that a change of law was required to make them subject to be taxed. We think it would be a manifest perversion of the statute in question to permit it to be made the means of enabling a tax official to obtain exemption from being restrained from enforcing an exaction which no legislation purports to provide for, and which, in suits to which that official or his official superior was a party, have been judicially determined not to be authorized by law. We conclude that the court, in awarding the injunction complained of, did not, within the meaning of the statute now under consideration, restrain the assessment or collection of any tax. The continued prosecution of the appeal in this case in the circumstances disclosed amounts to an attempt by a tax official to enforce the collection of a tax before, under the law which provides for it, authority to assess or collect that tax is conferred on any one.

3. The United States is not a necessary party to this suit, the object of which is to restrain threatened illegal conduct of a federal official violative of rights of the plaintiff. The exemption of the United States from suits does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded or threatened to invade. Philadelphia Co. v. Stimson, 223 U. S. 605, 619, 32 S. Ct. 340, 56 L. Ed. 570.

We conclude that on no ground urged is the decree under review erroneous or subject to be reversed.

That decree is affirmed.