257 F.2d 347
 UNITED STATES of America, and Laurie W. Tomlinson, Director of Internal Revenue of the United States for the Collection District of Florida, Appellants,
v.
Edward William CURD, Appellee.
 No. 17002.
 United States Court of Appeals Fifth Circuit.
 June 30, 1958.
 Rehearing Denied August 6, 1958.
 
 C. Guy Tadlock, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C., O. B. Cline, Jr., Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellants.
 Llewellyn A. Luce, Washington, D. C., for appellee.
 Before RIVES, CAMERON and BROWN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 As this case comes to us, the single question, presented on an uncontradicted record, is whether the Court erred in granting an injunction against the sale of Taxpayer's house and lots in Miami Beach, Florida, under a warrant of distraint based on an assessment made on May 24, 1953, for taxes ($13,390.51) and interest ($8,235.16) assessed in 1943 for the tax year 1942 but provisionally forgiven under the 1943 Current Tax Payment Act, c. 120, 57 Stat. 126, 26 U.S. C. § 1621 et seq.
 
 
 2
 By March 15, 1943, Taxpayer filed his individual income tax return with the Collector in Kentucky reporting income tax due for the year 1942 in the sum of $26,781.03. This was assessed on the Commissioner's list in April 1943. Payments by Taxpayer aggregating $13,390.52 were made on this reported liability in two equal installments in 1943. The unpaid balance of $13,390.51 was recorded on the books of the District Collector as discharged pursuant to the provisions of the pay-as-you-go 1943 Act, Section 6, 26 U.S.C. § 1622 note, and the amount previously paid on the 1942 assessment was credited to Taxpayer's 1943 income tax liability in accordance with that section.
 
 
 3
 In 1952 deficiencies were determined against the Taxpayer for all of the years from 1941 through 1951 and to which 50% fraud penalties were added under Section 293(b) of the 1939 Code, 26 U.S. C. § 293(b). Although Taxpayer had received a Deficiency Notice, he did not dispute the Commissioner's determination. These additional taxes, together with penalties and interest, aggregating approximately $260,000 were paid within two days by Taxpayer on July 31, 1952, after which, so the Taxpayer's complaint tells us, he departed for Canada where he continues to live, and the Government meanwhile indicted him for income tax evasion for some of these years. Included within this large sum paid on July 31, 1952, were additional taxes, fraud penalty, and interest for the year 1942 amounting to $5,920.67, $2,960.34 and $3,329.20 respectively.
 
 
 4
 Apparently treating the payment in 1952 of these sums for 1942 as a determination that fraud had occurred, the Commissioner determined that Taxpayer was not entitled for the year 1942 to the benefit of the so-called forgiveness provisions[1] of Section 6 of the 1943 Act, and on May 29, 1953, he reassessed the unpaid balance of tax ($13,390.51) shown on the Taxpayer's 1942 return, plus interest thereon to April 1953 in the amount of $8,235.16. This reassessment, together with others not now involved, was transferred to the District Director's office at Jacksonville where the distraint was issued, and the property advertised for sale.
 
 
 5
 The Taxpayer, by a complaint which specifically alleged only that there was a failure to mail the statutory registered Notice of Deficiency following the assessment of May 24, 1943, as required by Sections 272(a) and 273(a) of the 1939 Code, 26 U.S.C. §§ 272(a), 273(a), sought an injunction under the express terms of the Code.[2] Presumably by consent of the parties, Fed.Rules Civ.Proc. rule 15(b), 28 U.S.C. the issues were broadened and the Court, without ruling on the request for the statutory Section 272 injunction, granted the injunction on the specific ground that, fraud not having been proved in that proceeding, collection of the original assessment of 1942 was barred by the 6-year statute of limitation[3] in Section 275, 276.
 
 
 6
 Engaging arguments are made pro and con on whether collection of the 1942 "forgiven" assessment was barred under Section 276(c), whether this was the equivalent of an effort to recapture an erroneous refund barred under Section 3746(b) and (c) of the 1939 Code, 26 U.S.C. § 3746(b, c), whether the proceedings were invalid for want of a 90-day deficiency notice under Section 272, and the like. In our disposition of the case, we reach only one of these, and that only insofar as it relates to the Section 272(a) statutory ground for injunction. This is so because we are of the clear opinion that this was not the case for equitable injunction forbidden generally by the express words of the Code.[4]
 
 
 7
 Of course, if a Notice of Deficiency were required, then, since one was not given, injunction would issue on application under Section 272(a). Maxwell v. Campbell, 5 Cir., 205 F.2d 461. But without in anyway intimating anything which would have a bearing on the ultimate decision on the merits of this controversy, this 1952 assessment was not a "deficiency" within Section 272(a), 273 (a, b). Deficiency, as it is used in the statute, Section 271, 1939 Code, 26 U.S.C. § 271, relates to the assertion of a claim for an additional tax as a part of the mechanism by which the Board of Tax Appeals, now the Tax Court, acquires jurisdiction, and thus affords taxpayers an alternative remedy to payment and suit for refund. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 721, 49 S.Ct. 499, 73 L.Ed. 918; Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 86 F.2d 149, certiorari denied 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878. Accordingly, the injunctive relief authorized by Section 272(a) is limited to "deficiency" assessments of which the Tax Court would have jurisdiction. See Standard Oil Co. v. McMahon, 2 Cir., 244 F.2d 11, affirming D.C.N.Y., 139 F.Supp. 690; 9 Mertens Law of Federal Income Taxation, §§ 49.10-49.13 (1943).
 
 
 8
 What is asserted here is not an additional tax. That sought to be collected is the very tax which Taxpayer reported on his return and which was assessed by the Commissioner. The reassessment in 1952 came from the assertion that fraud had occurred which under Section 6 of the 1943 Act prevents forgiveness. This reassessment required no adjustment to income and deductions reported on the Taxpayer's 1942 return. Rather, it was based upon acceptance of the return as made.[5]
 
 
 9
 Once the case falls outside of the statutory grant of a Section 272(a) injunction, we must test it in the light of the emphatic language of Section 3653 and the limited circumstances in which, under equitable principles reflected in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and cases following it, injunction may nonetheless be granted. Equitable as it is in nature, the general principle defies a neat and all inclusive delineation of those circumstances which will authorize or compel injunction. But as we and many others have repeatedly pointed out, it is not enough that the tax asserted be illegal at least in the sense that it might, or will, ultimately be determined that the tax is not owing. "* * * neither the mere illegality of the tax complained of, nor its injustice nor irregularity, of themselves, give the right to an injunction in a court of equity." State Railroad Tax Cases, 92 U.S. 575, 23 L.Ed. 663, 669. There must be compelling circumstances having some reasonable resemblance to traditional notions of equity which indicate persuasively that there is no other adequate remedy, and that for unusual and extraordinary circumstances and irretrievable injustice would be done were an injunction not issued.[6]
 
 
 10
 That a tax may be barred under applicable statute of limitations is not itself a sufficient showing.[7] Especially would that be so where, as will often be the case, whether the particular statute of limitations has run or not will depend upon a determination by an appropriate tribunal or agency of the underlying facts, not the least of which would be the existence of fraud which obliterates the bar altogether. And yet that is all we have here. The complaint itself does not purport to suggest any equitable considerations and none were shown on the trial. It was the naked claim that a requisite deficiency notice had not been given, and that for one reason or another the collection in 1953 was now barred. That was not enough. It may turn out that the Taxpayer's legal theories are correct. But there was nothing arbitrary and capricious in the tack which the Government took. A full and adequate[8] opportunity is available to test the soundness of both. To grant this Taxpayer who demonstrates no appealing or necessitous circumstances the opportunity of contesting ultimate liability for taxes without following either of the traditional routes through the Tax Court or payment and suit to recover back, would not only undermine the judicial approach which acknowledges the inexorable necessities of the tax collecting process, Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901, but would ultimately discriminate unfairly against countless other taxpayers and would lead to more, not less, hardship and injustices.
 
 
 11
 The injunction ought not to have issued. To avoid any doubt, we emphasize again that we have not ruled upon the merits. We hold merely that this was not a case for injunctive relief, consequently the cause must be reversed with directions to vacate the injunction and dismiss the complaint.
 
 
 12
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 Subsection (a) and (b) of Section 6 "Relief From Double Payments in 1943" conclude with identical language: "* * This subsection shall not apply in any case in which the taxpayer is convicted of any criminal offense with respect to the tax for the taxable year 1942 or in which additions to the tax for such taxable year are applicable by reason of fraud."
 
 
 [2]
 Section 272(a): "* * * No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court."
 
 
 [3]
 The pertinent limitations are:
 "§ 275. Period of limitation upon assessment and collection.
 "Except as provided in section 276 —
 "(a) General rule. — The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *" [26 U.S.C.1952 ed., § 275]
 * * * * *
 "§ 276. Same — Exceptions.
 "(a) False return or no return. — In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.
 * * * * *
 "(c) Collection after assessment. — Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."
 [26 U.S.C. 1952 ed., § 276.]
 
 
 [4]
 "§ 3653. Prohibition of suits to restrain assessment or collection
 "(a) Tax. — Except as provided in sections 272(a), 871(a) and 1012(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U.S.C.A. 1952 ed., § 3653
 Section 7421(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7421(a) is substantially the same.
 
 
 [5]
 It is here, of course, that Taxpayer argues so strenuously that if the 1952 reassessment was not an additional tax, i. e., in the sense of being new, then it was "old" and after six years from the original assessment (1943), it was barred in 1949 under Section 276(c) note 3, supra. Whether there is any actual inconsistency is a matter reserved for the merits not now reached
 
 
 [6]
 Amongst the many cases are: Steinhagen Rice Milling Co. v. Scofield, 5 Cir., 87 F.2d 804, certiorari denied 300 U.S. 663, 57 S.Ct. 494, 81 L.Ed. 872; Beeland Wholesale Co. v. Davis, 5 Cir., 88 F.2d 447, certiorari denied 300 U.S. 680, 57 S.Ct. 672, 81 L.Ed. 884; Shelton v. Allen, 5 Cir., 96 F.2d 102, certiorari denied 305 U.S. 630, 59 S.Ct. 94, 83 L. Ed. 404; Larson v. House, 5 Cir., 112 F.2d 930; Shambaugh v. Scofield, 5 Cir., 132 F.2d 345; Robique v. Lambert, 5 Cir., 214 F.2d 3, affirming per curiam D.C.La., 114 F.Supp. 305, certiorari denied 348 U.S. 915, 75 S.Ct. 297, 99 L. Ed. 718; Darnell v. Tomlinson, 5 Cir., 220 F.2d 894; Lloyd v. Patterson, 5 Cir., 242 F.2d 742
 
 
 [7]
 Graham v. Du Pont, 262 U.S. 234, 43 S. Ct. 567, 67 L.Ed. 965; Bashara v. Hopkins, 5 Cir., 295 F. 319, certiorari denied 265 U.S. 584, 44 S.Ct. 459, 68 L.Ed. 1191; Cadwalader v. Sturgess, 3 Cir., 297 F. 73, certiorari denied 265 U.S. 584, 44 S.Ct. 459, 68 L.Ed. 1192; Seaman v. Bowers, 2 Cir., 297 F. 371; Sigman v. Reinecke, 7 Cir., 297 F. 1005, certiorari denied 264 U.S. 597, 44 S.Ct. 454, 68 L.Ed. 868; Seaman v. Guaranty Trust Co., D.C.N.Y., 1 F.2d 391; Thornhill Wagon Co. v. Noel, D.C.Va., 17 F.2d 407; Ellay Co. v. Bowers, 2 Cir., 25 F.2d 637, certiorari denied 277 U.S. 606, 48 S.Ct. 601, 72 L.Ed. 1012; Converse Cooperage & Yocono Co. v. Reinecke, D.C. Ill., 26 F.2d 747; Mellon v. Mertz, 65 App.D.C. 266, 82 F.2d 872, certiorari denied 299 U.S. 548, 57 S.Ct. 11, 81 L.Ed. 403
 
 
 [8]
 Taxpayer now urges that an adequate remedy by payment and suit for refund may not be available in reality as on such suit the Government will or may contend, and the Court might hold, as he insists was done in Lyddon & Co. v. United States, Ct.Cl., 158 F.Supp. 951, that taxpayer should have sought an injunction. See, also, Maule Industries, Inc., v. Tomlinson, 5 Cir., 244 F.2d 897. If the reference in Lyddon, supra, 158 F.Supp. at page 954, to the fact that taxpayer, had he really thought a deficiency notice was required, could have sought injunction was anything more than a make-weight dicta, it is of no significance here. For here the Government has asserted that an adequate remedy does exist in the form of payment of the disputed taxes and interest and a suit for refund. If such course is followed, the Government could not, in such suit, take a contrary course, and we would not permit it if attempted