**J. L. ENOCHS, District Director of Internal Revenue, Appellant,**

v.

**WILLIAMS PACKING & NAVIGATION CO., Inc., Appellee.**

**No. 18272.**

United States Court of Appeals
Fifth Circuit.
June 14, 1961.

Clarence J. Nickman, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Washington, D. C., Robert E. Hauberg, U. S. Atty., E. R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Meyer Rothwacks, George F. Lynch, Attys., Dept. of Justice, Washington, D. C., for appellant.

George E. Morse, S. E. Morse, William E. Logan, Gulfport, Miss., for appellee.

Before RIVES, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents two questions: whether fishermen carrying on their occupation of catching shrimp and oysters aboard trawlers, owned or leased by Williams Packing & Navigation Company, Inc., taxpayer-appellee, were its employees during the taxable periods involved within the meaning of §§ 1426 and 1607 of the Internal Revenue Code of 1939 and §§ 3121 and 3306 of the Internal Revenue Code of 1954; and whether taxpayer has shown the existence of such extraordinary and unusual circumstances as to warrant the granting of an injunction notwithstanding the prohibitions contained in § 7421(a) of the 1954 Code.

The district court held that each of the questions should be answered in favor of the taxpayer and, after full hearing, denied the Director's claim of $41,-568.57, plus statutory interest, assessed against it as Federal Insurance Contributions and Federal Unemployment Taxes for taxable periods in the years 1953, 1954 and 1955. Its action was taken after an extended hearing, at which it considered the oral testimony of eighteen witnesses and the depositions of three,

along with a large number of exhibits the originals of which are before us; and it entered detailed findings of fact and conclusions of law occupying some twenty pages in the record. Its written opinion is reported in 176 F.Supp. at pages 168 et seq.

The opinion was based upon the evidence heard by the court and the consideration of written briefs filed by the parties. It deals in detail with the contentions made by the appellant Director, and we are of the opinion that the findings of fact of the court below, brought forward in part in the opinion, are supported by substantial evidence in the record and that its conclusions of law are sound; and, on the basis of the court's findings and opinion and the brief comments which follow, we affirm the judgment of the court below.

The published opinion deals with all of the questions argued before us,[1] and the trial court's handling of the issues is so clear and complete that we feel that an extended opinion by us is not called for.

 A careful reading of the Director's brief shows that the question underlying disposition of the whole case, that is, whether the fishermen were employees of the taxpayer corporation, was one essentially to be resolved from the facts as developed from the large number of witnesses the court heard.[2]

A few excerpts from the court's published opinion will illustrate the accurate grasp which the court below had of the problems before it and the law under which they would be resolved:

"This case, like so many other cases, depends upon the individual facts as brought out here and not upon methods of other similar concerns engaged in like business. No uniform pattern covering the entire United States can be formulated except where the facts are identically the same. The judgment to be rendered in this case must be determined from the facts of this particular case, including all the exhibits and reasonable inferences therefrom and the conduct of the parties so far as it may have probative force upon the issues. The law must be determined from the Acts of Congress, the judicial interpretations by the courts and the Treasury Regulations * * *

"It has been the custom on the Coast of Mississippi since the seafood packing industry started that fishing vessels have operated upon a share or lay basis, but the details of this customary way varied between some of the packers and that is the reason that it is necesary to determine how the corporation in this particular case conducted its business. * * *

"These examples of the authorities simply illustrate the point that each case will be determined by the facts of the particular case and that no general pattern can be established or formulated. The record in the

---

1. "Appellant asserts that the court below erred in the following respects:

 "1. In holding that the relationship of employer-employee did not exist between the taxpayer and the fishermen (boat captains and crew members).

 "2. In holding that taxpayer had no right of control over the fishermen.

 "3. In holding that the taxes assessed were illegal.

 "4. In holding that collection of the taxes would 'totally wreck and ruin the corporation.'

 "5. In holding that collection of the taxes should be enjoined."

2. The Director's contentions with respect to this question embrace these propositions: " * * * The fishermen were subject to taxpayer's right of control, and control was actually exercised; the employee relationship is evidenced by taxpayer's right to discharge the boat captains and crew members; the method of remuneration is not inconsistent with an employer-employee relationship; the parties treated their relationship as that of employer-employee; a realistic application of the common law control test requires the conclusion that the fishermen were employees, rather than independent contractors * * * "

Gulf Coast Shrimpers and Oystermans Association case, supra [5 Cir., 236 F.2d 658], well demonstrates that fact and the fact that all packers on the Coast of Mississippi do not have identical patterns. * * * "3

■ The careful analysis of the testimony and application of the cases the Government relied on before the Court below and now relies on before us demonstrate that it fully comprehended the issues of fact involved and the law applicable to them. The conclusion reached by the trial court from the testimony is entitled to the presumption of correctness with which the Federal Rules invest it.

The Director argues earnestly that the injunction was not properly granted in this case. His contention is thus summarized—*each of the two points relating to the action of the court below in deciding a fact issue:*

"In ruling that the injunction was properly granted, it (the trial court) held, erroneously, (1) that the tax was 'illegal' because the employer-employee relationship did not exist between the taxpayer-corporation and the fishermen, and (2) that to allow the Director to proceed to levy would have brought financial disaster to the taxpayer. * * *

"As this Court said in United States v. Curd [5 Cir.], 257 F.2d 347, 350, the issuance of any such injunc-

tion must be tested in the light of the 'emphatic language' of the statute and the 'limited circumstances' in which, under equitable principles reflected in Miller v. [Standard] Nut Margarine Co., 284 U.S. 498 [52 S. Ct. 260, 76 L.Ed. 422], and cases following it, injunctive relief may be granted despite the statutory prohibition. * * *

"'* * * Basically, the error of the court below lies in its failure to realize that the taxpayer-corporation and the DeJean partnership, though separate legal entities, were parts of an integrated operation and for all practical purposes, including financial, were merged." [Emphasis added.]

Appellant quotes from the Curd case (257 F.2d at pages 350–351) our estimate of the "extraordinary circumstances" which would meet the stringent requirements necessary to support the conclusion that "irretrievable injustice would be done were an injunction not issued." The opinion of the court below shows that the judge carefully considered the authorities relied upon by the Government and others and concluded "as a matter of law that it was appropriate to grant the temporary injunction," and to make it permanent.

Dealing with the relationship between DeJean and the taxpayer, which the Di-

3. The accuracy of these statements of the trial judge is illustrated by recent decisions rendered by the National Labor Relations Board which have been called to our attention. We refer to six decisions and Orders by the Labor Board based upon its published decision and F. Alioto Co., 129 N.L.R.B. No. 6, where, under circumstances similar to those existing in this case, the Labor Board held that the employees on shrimp boats were not employees of the company owning the boats, but of the captains who leased them:

Case No. 23–RC–1542, Independent Fish Co., Inc., Employer, and General Drivers' Etc., Union, Petitioner, Order entered Oct. 5, 1960;
Case No. 23–RC–1538, Doro Besteiro, Employer, and General Drivers and

Helpers Local Union No. 657, decided Oct. 6, 1960;
Case No. 23–RC–1550, Sea Garden Corporation, Employer, and General Drivers and Helpers Local Union No. 657, etc., decided Oct. 5, 1960;
Case No. 23–RC–1549, Wilhelm Seafoods, Inc., et al., Employers, and General Drivers and Helpers Union No. 657, decided Oct. 5, 1960;
Case No. 23–RC–1539, Roberto deLuna Employer, and General Drivers and Helpers Local Union No. 657, decided Oct. 5, 1960.

These decisions have no decisive effect in this case, but serve merely to attest the fact that agencies of the Government are resolving similar issues in a way which is consonant with the trial court's decision here.

rector referred to as basic, and with what the Director characterized as error leading to the wrongful issuance of the injunction, the court below in its opinion said:

"It * * * is the theory, of the Government that the DeJean Packing Company is able to pay the tax and that because of the relationship of Elmer Williams to the corporation and to the partnership that the corporation had it within its power to require the De-Jean Packing Company to pay the tax for it if the corporation be liable. However, as heretofore stated, this contention is not sustained by the evidence. * * *"

█ Large portions of the evidence in the record and of the Director's brief deal with this relationship, which appellee charged to have encompassed fraudulent transactions and concealments in the dealings between the appellee corporation and the partnership in an effort to escape the exactions here involved. The witnesses, who detailed the circumstances from which an intelligent conclusion as to such a relationship would have to be drawn, were local people, doubtless well known to the judge. He heard them testify and he set forth fully in his findings and the opinion the nature and ingredients of that relationship as he found them to be. The inferences he drew and the conclusion he reached from the human testimony, the exhibits, and the evidence of customs given by the witnesses included the weighing and assaying of testimony involving subtleties and intangibles which could best be done by one having the "feel" of the case which was possessed by the district judge. The Director's evidence was sharply contradicted, and the trial court doubtless considered that major reliance was placed by the Director on the testimony of one or more witnesses who were embittered by the events attending a strike against appellee. Its decision on this fact question is invested with the presumption of correctness, which an examination of the record does not tempt us to set aside as clearly erroneous.

The trial court's decision on this fact question, treated by appellant throughout as being basic, virtually disposes of the claim that the injunction was not properly granted. Appellant did argue briefly that appellee was able to pay the exaction and sue for refund, relying to a considerable extent on the testimony of strongly biased witnesses to sustain this contention. The trial court's findings [4] are against appellant and they are clearly supported by the evidence.

This Court has been diligent in protecting the public revenues against improvident injunctions. The last case coming to our attention is McDonald v. Phinney, 5 Cir., 1961, 285 F.2d 121. There we affirmed the action of a district judge in refusing to make permanent a temporary injunction which had been issued and in dismissing the complaint under § 7421. In that case the tax involved had been reduced to judgment in the Tax Court on the basis of stipulation between the parties and, more than a year and a half later, the taxpayer filed his action for injunction on the ground that "he lacked sufficient funds to pay the sum alleged to be owing to the government and that to allow the government to collect such sums would be to subject his property to a forced sale by reason of which he would suffer irreparable damage."

"The Government complains of bad faith on the part of the plaintiff and concealment of evidence. The court finds as a fact that the plaintiff was not guilty of any bad faith or any intentional concealment of any records or evidence."

4. "I find as a fact that if the levy had been made upon the assets of the corporation it would have wrecked the corporation and thrown it into bankruptcy, as it did not have and does not have assets with which to pay the taxes and not sufficient assets with which it could have negotiated a loan to pay the tax. * * *

In that case, we set forth a good summary of the applicable rule (at page 122):

"We think that the trial court acted properly in dismissing the complaint. Section 7421 clearly prohibits suits to restrain assessment or collection of taxes except in certain cases not relevant to the present inquiry. While it is true that, notwithstanding the statutory prohibition against such suits, they have been allowed under certain circumstances, see, e. g., Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, they are not permitted when the complaining party asserts *financial hardship and nothing or little more.* State Railroad Tax Cases, 92 U.S. 575, 23 L. Ed. 663; Lloyd v. Patterson, 5 Cir., 242 F.2d 742; Enochs v. Green, 5 Cir., 270 F.2d 558; Robique v. Lambert, D.C., 114 F.Supp. 305, affirmed per curiam 5 Cir., 214 F.2d 3. We think it clear that the facts involved in the instant case necessitate its falling into the latter class of cases, for appellant has failed to show the extraordinary circumstances which would justify the issuance of an injunction by the district court. See United States v. Curd, 5 Cir., 257 F.2d 347; Tomlinson v. Poller, 5 Cir., 220 F.2d 308, and Darnell v. Tomlinson, 5 Cir., 220 F.2d 894." [Emphasis added.]

The circumstances relied upon in that case and the cases cited by it fall far short of those found to be present here. The trial court said here, in addition to that quoted supra: "As before stated, if the Government had been permitted to execute upon the property and seize and sell it, it would totally wreck and ruin the corporation. The corporation is entitled to continue its existence *because its charter has value and gives it valuable rights in Louisiana,* and as long as it complies with all the federal laws it should not be permitted to be destroyed." [Emphasis added.]

A peculiar equity existing in appellee's favor—which the Government does not dispute except on the ground that the facts did not support the court's findings—arises from the effort of the Director to enforce taxes against the corporation by coercion of its stockholders to pay the corporation's supposed indebtedness. The Director did not assess the tax against the stockholders or the partnership, but confined his effort to an attempt to reach the assets of those not made parties to the assessment or brought into this action, by this indirect proceeding aimed at collecting the money from those held by the court not to be liable for it.

■ We do not find any case decided by the Supreme Court or by this Court denying injunctive relief under facts approximating those justifiably found by the trial court as present in this case. All of the tests and requirements of Miller v. Standard Nut Margarine Co., supra, were met by the proof and the findings of the court; and we think, moreover, that the injunction was justified under Allen v. Regents of University System of Georgia, 1938, 304 U.S. 439, at pages 448–449, 58 S.Ct. 980, at page 984, 82 L.Ed. 1448, where it is said: "The dispute as to the propriety of a suit in equity must be resolved in the light of the nature of the controversy. * * *. These extraordinary circumstances we think justify resort to equity. What we have said indicates that R.S. § 3224, supra [now § 7421], does not oust the jurisdiction. The statute is inapplicable in exceptional cases where there is no plain, adequate, and complete remedy at law. This is such a case, for here the assessment is not of a tax payable by respondent but of a penalty for failure to collect it from another." The facts here bring this case closely in line with that case, as well as Hill v. Wallace, 1922, 259 U.S. 44, 62, 42 S.Ct. 453, 66 L.Ed. 822; Dodge v. Brady, 1916, 240 U.S. 122, 36 S.Ct. 277, 60 L.Ed. 560; and Lassoff v. Gray, 6 Cir., 1959, 266 F.2d 745, and the cases therein listed at page 746.

Based upon the published opinion of the court below, supplemented by these comments, the judgment appealed from is

Affirmed.

RIVES, Circuit Judge (dissenting).

This suit seems to me one to restrain the collection of a tax clearly prohibited by Section 7421(a) of the 1954 Internal Revenue Code.[1] Admittedly, the suit does not fall within the express exceptions which relate to insufficiency of the notice of deficiency provided in Sections 6212(a) and (c), and 6213(a). Under familiar rules of construction, the statute having provided express exceptions to its prohibition, it would seem that implied exceptions are excluded. However, both the learned district judge and the majority of this Court feel that implied exceptions are provided by Miller v. Standard Nut Margarine Company, 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and that this suit falls within such exceptions. With deference, I disagree on both scores.

The courts have been prohibited from entertaining suits for the purpose of restraining the assessment or collection of any tax since 1867.[2] The rationale and philosophy of that prohibition was first clearly stated in Cheatham et al. v. United States, 1875, 92 U.S. 85, 89, 23 L.Ed. 561:

"If there existed in the courts, State or National, any general power of impeding or controlling the collection of taxes, or relieving the hardship incident to taxation, the very existence of the government might be placed in the power of a hostile judiciary. Dows v. The City of Chicago, 11 Wall. 108 [20 L.Ed. 65]. While a free course of remonstrance and appeal is allowed within the departments before the money is finally exacted, the general government has wisely made the payment of the tax claimed, whether of customs or of internal revenue, a condition precedent to a resort to the courts by the party against whom the tax is assessed. In the internal-revenue branch it has further prescribed that no such suit shall be brought until the remedy by appeal has been tried; and, if brought after this, it must be within six months after the decision on the appeal. We regard this as a condition on which alone the government consents to litigate the lawfulness of the original tax. It is not a hard condition. Few governments have conceded such a right on any condition. If the compliance with this condition requires the party aggrieved to pay the money, he must do it. He cannot, after the decision is rendered against him, protract the time within which he can contest that decision in the courts by his own delay in paying the money. It is essential to the honor and orderly conduct of the government that its taxes should be promptly paid, and drawbacks speedily adjusted; and the rule prescribed in this class of cases is neither arbitrary nor unreasonable."

Since then that reasoning has been often repeated.[3] If a fair and adequate administrative remedy is provided, due process does not require an opportunity for judicial review of tax liability.[4] The suit in the present case was filed only after the Appellate Division had "carefully considered your claims for abatement of employment taxes as listed below and the information furnished by your

1. "§ 7421. *Prohibition of suits to restrain assessment or collection*

"(a) *Tax.*—Except as provided in sections 6212(a) and (c), and 6213(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U.S.C.A. § 7421.

2. March 2, 1867, c. 169, § 10, 14 Stat. 475.

3. E. g., Graham v. DuPont, 1923, 262 U.S. 234, 254, 255, 43 S.Ct. 567, 67 L.Ed. 965, and the cases there cited.

4. Anniston Manufacturing Co. v. Davis, 1937, 301 U.S. 337, 342, 343, 57 S.Ct. 816, 81 L.Ed. 1143.

representatives," and had "concluded that there is no overassessment of employment taxes." While the result is questioned, there has been no contention or holding that such review does not constitute a fair and adequate administrative remedy.

Properly interpreted, Miller v. Standard Nut Margarine Company, supra, is not an attempt of the judiciary to emasculate by implied exceptions the clear and explicit prohibition of jurisdiction contained in the statute. The theory of that case is that the exaction was not a true tax, but simply an "attempted exaction by a tax official under the guise of an assessed tax." That theory was thus stated by Judge Walker for this Court,[5] and was explicitly adopted by the Supreme Court:

"And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of *an exaction in the guise of a tax* there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector." (Emphasis supplied.)

Miller v. Standard Nut Margarine Company, 1932, 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422.

That Miller v. Standard Nut Margarine Company presented such an exceptional case as to amount to an abuse of jurisdiction by the tax officials is made apparent in the extended and able analysis of that case in Homan Mfg. Co. v. Long, 7 Cir., 1957, 242 F.2d 645, 651–653. In no other case has the Supreme Court permitted an injunction to restrain the assessment or collection of a tax. The cases are collected and discussed in 9 Mertens Law of Federal Income Taxation, Zimet Revision, Section 49.212, where it is stated:

"With just one exception, those cases in which the Supreme Court has permitted injunctions restrain-

ing Government officials were all cases in which the Court held that the purported tax sought to be restrained was in reality not a tax but a penalty, and the Court said that the statutory prohibition did not apply to the collection of penalties. The decision in Miller v. Standard Nut Margarine Company is the only case in which the Supreme Court clearly held that although no penalty was involved, the circumstances were so special and extraordinary as to render inapplicable the statute prohibiting the maintenance of a suit to restrain the collection of taxes."

The rationale of Miller v. Standard Nut Margarine Company, supra, cannot be extended to bring within some supposedly implied exception cases like the present one without emasculating the prohibition contained in the statute. That much was recognized by Judge Sanborn, speaking for the Eighth Circuit, in a case which seems to me directly in conflict with the holding of the majority in the instant case:

"It is true that where a complainant demonstrates that what purports to be a tax is merely an exaction in the guise of a tax and that there are special and extraordinary circumstances which bring the case under some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collection of the pseudo-tax. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 76 L.Ed. 422. The validity of the taxing act under which the assessments against appellant were made has been sustained. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L. Ed. 1307, 109 A.L.R. 1319. The assessments are for taxes, and not for exactions in the guise of taxes. The appellant may not owe them, but

5. Miller v. Standard Nut Margarine Co., 5 Cir., 1931, 49 F.2d 79, 84.

that does not change their nature, nor is nonliability a special or extraordinary circumstance. This case presents the ordinary situation of a taxpayer resisting payment of taxes which he believes that he does not owe. That the appellant is in poor financial condition, that it will be a hardship upon him to pay the taxes and sue for their recovery, that to compel him to pay them threatens ultimate ruin to his business, and that a court of Iowa has ruled that appellant was not an employer of the drivers of his cars and was not liable for contributions under the Iowa Unemployment Compensation Law, Chap. 77.2, Code of Iowa 1939, § 1551.07 et seq. [I.C.A. § 96.1 et seq.], we do not regard as 'special and extraordinary circumstances' which would justify the maintenance of this action to enjoin the collection of these taxes."

Kaus v. Huston, 8 Cir., 1941, 120 F. 2d 183, 185. See also, Homan Mfg. Co. v. Long, 7 Cir., 1959, 264 F.2d 158, 160.

In the present case, the taxes are not attacked as themselves unconstitutional or illegal, nor is any question raised as to the good faith of the tax officials in assessing the taxes against the plaintiff. Instead, the question is closely and hotly litigated purely as a question of fact, thus stated by the district court:

"The main question posed for solution is whether or not the captains and crewmen who performed fishing services aboard trawlers of which the plaintiff was the owner or the lessee, were employees within the meaning of Sections 1426 and 1607 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 1426, 1607, and Sections 3121 and 3306 of the Internal Revenue Code of 1954, 26 U.S.

C.A. §§ 3121, 3306. If the relationship of employer-employee existed, then the tax was properly assessed. If the relationship of employer-employee did not exist, then the levy was unlawful."

Williams Packing & Navigation Co. v. Enochs, D.C.S.D.Miss.1959, 176 F.Supp. 168, 170.

This is a more extreme application of Miller v. Standard Nut Margarine Company, supra, than has ever before been countenanced by this Circuit.[6] Very clearly, I submit, this case is not one of an illegal exaction in the guise of a tax.

Just as clearly, the case is not brought within the second requisite of the rule, viz., "special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence." Miller v. Standard Nut Margarine Company, supra, 284 U.S. at page 509, 52 S.Ct. at page 263. Equity may enjoin vexatious litigation not brought in good faith but instituted for annoyance and oppression. 43 C.J.S. Injunctions § 39; 28 Am.Jur., Injunctions, Sec. 210. I know of no case, however, permitting an injunction merely upon the basis of financial hardship, and so to do would be an obvious unequal application of the law to the poor and to the rich.

Further, under the facts and circumstances of this case, the taxpayer should not be permitted to establish irreparable damages by hiding behind the corporate fiction, when for all practical purposes, including financial, the taxpayer corporation and the DeJean partnership were parts of an integrated operation under the control and direction of the same two individuals. Southern Pacific Co. v. Lowe, 1918, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142.

I therefore respectfully dissent.

---

6. See for example, United States v. Curd, 5 Cir., 1958, 257 F.2d 347, 350; Enochs v. Green, 5 Cir., 1959, 270 F.2d 558, 561; McDonald v. Phinney; 5 Cir., 1961, 285 F.2d 121, 122.